effect, notwithstanding the discharge ; or to apply to the vice chancellor, by petition, for leave to take out an execution, against the appellant, upon such decree. This being a new question here, and the affidavits on the part of the complainants making out a strong prima facie case of fraud, no costs are allowed to the appellant, either upon this appeal or upon the motion to the vice chancellor. Nor is the appellant to be permitted to bring any suit against the complainants, or their solicitor, or the sheriff, for any thing done under the execution ; without the special leave of the vice chancellor. But if the complainants do not eventually succeed in showing the discharge to be fraudulent, the vice chancellor is to direct compensation to be made, to the appellant, for any actual damage which he has sustained by the seizure of his property under the execution ; to be ascertained in such manner as the vice chancellor may think proper to direct.

## The New-York Life Insurance and Trust Company *vs.* Milnor and others.

It is a matter of course, on making a decree of foreclosure and for the sale of the mortgaged premises, upon a mere suggestion that separate portions of such premises are held, or claimed, by different persons, under conveyances or mortgages which are subsequent to the mortgage to the complainant, to insert provisions in the decree which will enable the master to sell in such a manner as to protect the equitable rights of the defendants respectively.

Under the usual provision inserted in decrees in such cases, if the grantee of a portion of the premises is, by virtue of his conveyance, entitled to a right of way, or other easement, in the residue of the premises which belonged to his grantor subsequent to such conveyance, it will be a matter of course for the master to sell such residue subject to the right of way, &c. in favor of the owner, or purchaser, of the dominant tenement, and of the heirs and assigns of such owner or purchaser.

Where it is suggested, at the time when the decree of foreclosure and sale is applied for, that the mortgaged premises are held by the several defendants in parcels, the proper direction, to be inserted in the decree, is that if it shall appear to the master who makes the sale that separate parcels of the mortgaged premises have been con-

veyed, or encumbered by the mortgagee, or by those claiming under him subsequently to the lien of the complainant's mortgage, such master shall sell the mortgaged premises in parcels, in the inverse order of their alienation; and according to the equitable rights of the parties as such subsequent grantees or incumbrancers, as such rights shall be made to appear to the master.

If a man conveys to another a piece of land surrounded by other lands of the grantor, the grantee, and those claiming under him, have a right of way of necessity through such other lands of the grantor; as incident to the grant. And the same principle applies where the piece of land conveyed is surrounded in part by the lands of the grantor, and in part by lands of a third person.

A right of way of necessity, over the lands of the grantor, in favor of the grantee and those subsequently claiming the dominant tenement under him, is not a perpetual right of way; but continues only so long as the necessity exists.

And if the grantee of the dominant tenement, or those claiming the same under him, afterwards, acquires by purchase or otherwise, a convenient way over his own lands, to the tenement in favor of which the way of necessity previously existed, the way of necessity over the lands of the original grantor of such tenement will cease.

So, if a convenient way to such tenement is subsequently obtained, by the owner thereof, from the opening of a public highway to, or through, such tenement.

*Aliter,* where the owner of land has a right of way to the same, over the premises of another, either by prescription or by express grant.

A way of necessity only arises upon the implication of a grant, and cannot be extended beyond what the existing necessity of the case requires. It is only commensurate with the existence of the necessity upon which the implied grant is founded; and when such necessity ceases, the right of way also is terminated.

THIS was an application on the part of S. Grant, one of the defendants in this cause, for a rehearing, or for a modification of the decree of sale of the mortgaged premises, or for a review and correction of the decision of the master charged with the sale, as to the order in which the several parcels of the mortgaged premises should be sold under the decree. The premises were one hundred and twelve and a half acres of land in the county of Genesee, lying in the form of a parallelogram, bounded upon the west by a public highway; and were mortgaged to the complainants in 1833, by J. Milnor, the then owner thereof, to secure the payment of $1000 and interest. Milnor conveyed the whole premises to S. Harmon, who subsequently conveyed the same to N. McComber, one of the defendants in this cause. In February, 1837, McComber conveyed the whole premises to J. Ranney, subject to the payment of the complainant's mortgage; and

in March thereafter, Ranney gave back to McComber, a mortgage, upon the same premises, for $300; upon which mortgage a small balance remained due at the time of this application.    In November, 1838, Ranney conveyed twenty acres of the mortgaged premises, lying upon the south side thereof, and extending from the highway to the rear of the lot, to the defendant J. Conger, with warranty, *subject to the payment of* $400, *of the mortgage of the complainants, and the interest on that sum from the first of December thereafter.*    And in January, 1841, Conger conveyed the undivided half of this twenty acres, together with other lands, to N. Tuller, with warranty; and at the same time he took back a mortgage upon the premises thus conveyed, to secure the payment of $2000; which mortgage was subsequently assigned by Conger to J. H. Martindale.

In July, 1839, Ranney conveyed ten acres, in the southeast corner of the remaining ninety-two and a half acres of the mortgaged premises, to H. J. Pearce, with warranty.    Those ten acres were subsequently conveyed, by Pearce, to the defendant R. Sprague, who conveyed the same to Martindale after the commencement of this suit.    This part of the mortgaged premises was not adjacent to any road; and the owner thereof claimed a right of way of necessity, by virtue of the deed from Ranney to Pearce, over the residue of the mortgaged premises which belonged to Ranney at the date of that conveyance.    On the 23d of October, 1841, Ranney conveyed such residue of the mortgaged premises, being eighty-two and a half acres, to N. Tuller and C. Conger, with warranty; subject to the mortgage to the complainants.    At the same time he took back from them, a mortgage upon the same eighty-two and a half acres of the mortgaged premises, to secure the payment of $1875 of the purchase money, with interest thereon from the first of May thereafter; which mortgage was subsequently assigned to the defendant Grant, as collateral security for a debt due to him from Ranney, the mortgagee.    Tuller died insolvent; and his infant heirs were made parties to the bill of foreclosure, together with the other persons who had interests in, or liens upon, any part of the mortgaged premises at the time of the commencement of the suit.

No defence being made to the suit, a decree was made for the foreclosure and sale of the mortgaged premises, or of so much thereof as might be necessary to pay the debt and costs of the complainants, and the costs of the guardian ad litem of the infant defendants. The decree also directed that the master who should make such sale should, on a day to be appointed by him before such sale, and of which the parties who had appeared in the cause were to have notice, receive proofs of the order and manner of the alienation of the mortgaged premises, and should sell the same in parcels, in the inverse order of alienation, except where the conveyance by which the parcels, or any of them, had been alienated, should express that the same was made subject to the payment of the mortgage to the complainants, or of portions thereof, which parcels should be first sold by the master, in the inverse order of alienation; and that each parcel sold, should be sold subject to the legal and equitable right of passage across the same of the *grantors* of the remaining parcels of the said premises, and their assigns.

Under this decree, the master was attended by the defendants who had appeared, in the cause, and received proofs of the order and manner of alienation of the mortgaged premises. But the defendant Grant, who had suffered the bill to be taken as confessed against him for want of an appearance, was not summoned, and did not attend to produce proof of his rights; and no evidence was introduced before the master, as to the existence of the mortgage of the 23d of October, 1841, from Tuller & Conger to Ranney, or of the assignment of such mortgage to Grant. The master therefore decided that the several parcels of the mortgaged premises should be sold in the following order. *First;* the eighty-two and a half acres sold by Ranney to Conger & Tuller; *Secondly,* Conger's undivided half of the twenty acres conveyed to him in November, 1833; *Thirdly,* the other undivided half of the same twenty acres; and *Fourthly,* the ten acres conveyed to Pearce, in June, 1839.

*J. Rhoades,* for defendant Grant. The decree is erroneous in requiring the master to sell the 82½ acres, in the first instance, to

pay the complainants' mortgage ; for the reason that the 20 acres which was conveyed in November, 1838, was conveyed subject to the payment of $400 of the complainants' mortgage, with interest from the 1st December, 1838.

The decree is also erroneous in giving to the person who shall become the purchaser of any portion of the premises a right of passage over and across the premises ; for the reason that no such right of way is shown either in the pleadings or the conveyances ; and also because the right of way is not defined by metes, courses and distances, or located in any particular part of the premises.

Martindale having become a party interested, with a full knowledge of all the facts at the time he purchased the 10 acres of his client Sprague, and at the time he contracted for the purchase of the decree, is chargeable with the costs of this application ; if the court shall be satisfied that the errors complained of were procured at his suggestion, and for the purpose of obtaining an undue advantage. And such costs ought to be charged on the proceeds of the 10 acres, or on him personally.

*O. Clark*, for Martindale, Sprague, and Conger. The decree is correct in relation to the right of way. It does not create or decree a right of way ; but simply protects any legal or equitable right of passage which Martindale already possesses. And is it wrong to protect such rights? Clearly, no further proceedings are necessary in the cause, to ascertain the respective rights of the parties in this respect. If Martindale does not now possess a right of way which ought to be protected, the decree does not secure one to him. But if the above is not a sufficient answer, and the fact of the existence of a right of way should arise, then the papers disclose that Martindale is entitled to such right. (*See* 3 *Kent's Com.* 420, 4th ed.)

The decree requires no amendment in respect to the order of sale. It provides for the sale in the inverse order of alienation, and that the parties who have last agreed to pay the complainants' mortgage, shall have their portions of the mortgaged premises first sold.

N, Y. Life Insurance and Trust Co. v. Milnor.

The report and determination of the master, as to the order of sale, were right, because he decided on the evidence produced to him. Had the mortgage of Grant been proved, we concede that one undivided half of the 20 acres retained by Conger should be first sold, to satisfy the whole of the complainants' claim; but not the other undivided half of said 20 acres covered by Martindale's mortgage. For Conger gave Tuller a warranty deed of that undivided half of the 20 acres, and in consideration of that, received back the mortgage which was assigned to Martindale, and which he now owns. This mortgage is prior in date to the mortgage which Grant holds. After that Conger and Tuller purchased the remainder of the mortgaged premises, subject to the payment of the whole of complainants' mortgage. Suppose the complainants' mortgage had then been foreclosed. Could Conger and Tuller insist that the undivided half of the 20 acres covered by Martindale's mortgage, and for which Conger had given a warranty deed, should be first sold? Manifestly not. How, then, can Grant, as against the holder of that mortgage, claim what neither Mr. Conger nor Tuller, the mortgagors, could claim?

This is a matter addressed to the discretion of the chancellor. Grant has slept on his rights. Had the master reported the evidence to the court his determination would have been approved; because it is sustained by the evidence produced. The equity of the application does not require any interference in favor of Grant.

Here is a decree fairly made. Grant has not been vigilant enough (although put on his guard) to take care of his rights; and there are no merits in his favor to render it proper to open the decree. But should the court think otherwise, Grant should be required to pay the costs of the decree, and of resisting this motion, to Martindale as the solicitor of Sprague, as well as to the solicitor of the complainant.

THE CHANCELLOR. In the absence of any proof of the existence of the mortgage upon the eighty-two and a half acres, to secure a part of the purchase money of that portion of the prem-

ises covered by the mortgage of the complainants, the master did not err in deciding that the eighty-two and a half acres should be sold first, to satisfy the amount reported due to the complainants, and the interest and costs. And under the special directions contained in this decree, as to the mode of selling, it is somewhat doubtful whether the master would have been authorized to decide differently, even if the defendant Grant had appeared before him and proved the giving of that mortgage to Ranney, and the assignment thereof to himself. Upon the facts now disclosed, however, the petitioner is entitled to relief, upon payment of the costs to which the defendants Sprague and Conger have been subjected in opposing this application. And if the particular directions contained in this decree prevent the proper adjustment of the rights of the parties, in settling the order of sale, the decree itself must be amended by striking out the particular directions, and inserting the directions usually contained in decrees in such cases.

Under the act of 1840, to reduce the expenses of foreclosing mortgages, and the rules of this court regulating the proceedings in foreclosure suits, defendants who have distinct interests in different portions of the mortgaged premises, but who have no defence to the complainant's claim as set forth in his bill, have no opportunity, previous to the decree, to litigate the question, between themselves, as to the order in which the several parcels of the mortgaged premises should be sold ; so as to protect the equitable rights or interests of such defendants in their respective portions of the premises. It is, therefore, a matter of course, at the time of making a decree of foreclosure and sale, to satisfy the complainant's debt and costs, upon a mere suggestion that separate portions of the mortgaged premises are held by different persons, under conveyances or mortgages subsequent to the mortgage of the complainant, to insert a provision in the decree which will enable the master to sell in such a manner as to protect the equitable rights of the defendants respectively. The provision usually inserted in the decree in such cases is, that if it shall appear to the master, who is to make the sale, that separate parcels of the mortgaged premises have been conveyed, or incum-

bered, by the mortgagor, or by those claiming under him subse
quent to the lien of the complainant's mortgage, such master shall
sell the mortgaged premises in parcels, in the inverse order of
alienation, *according to the equitable rights of the parties who are
subsequent grantees or incumbrancers, as such rights shall be
made to appear to the master.* This qualification of the direction
to sell in the inverse order of alienation, that it shall be according
to the equitable rights of the subsequent grantees or incumbran-
cers, is necessary to meet a case like the present. And it should
always be inserted in the decree when such decree directs the sale
of the premises in parcels, in the inverse order of alienation. Un-
der a decree thus drawn, if the grantee of a portion of the prem-
ises was, by virtue of his conveyance, entitled to a right of way,
or other easement, in the residue of the premises which belonged
to the grantor subsequent to such conveyance, it would be a
matter of course for the master to sell such residue subject to
such right of way, or other easement, in favor of the owner or
purchaser of the dominant tenement, and his heirs and assigns.

It was settled in the case of *Clark* v. *Rugge*, (2 *Roll. Abr.* 60,)
which appears to be the same case reported by Croke under a
somewhat different title, that if a man, having a close surrounded
by his own land, grants such close to another, the grantee and
those claiming under him have a right of way of necessity,
through the lands of the grantor, as incident to the grant; which
way of necessity the grantor may assign to the grantee through
such part of his land as he shall think proper. The same prin-
ciple also appears to apply to the case where the close granted
is partly surrounded by lands of a third person. At least, such
appears to have been the opinion of Mr. Justice Popham in
*Jordan* v. *Atwood*, (*Owen's Rep.* 122.) The implied grant of
a way of necessity over the lands of the grantor, appears to be
as strong in the one case as in the other; for the grantee cannot
claim a right of way over the adjoining lands of such third per-
son. The case of *How'on* v. *Frearson*, (8 *Term Rep.* 50,) also
appears to be a decision in favor of the principle that there is an
implied right of way over the adjoining lands of the grantor,
where the grantee has no other means of obtaining access to the

N. Y. Life Insurance and Trust Co. v. Milnor.

lands granted, without trespassing upon the property of a stranger. For, as I understand that case, the land conveyed by the plaintiff and others, to the defendant, was bounded on three sides by the land of persons other than the grantors. But as the grantee could not have access to his land, called the *upper meadow*, on the north, south or west sides thereof, without trespassing upon the property of strangers, he was entitled to a way of necessity, by virtue of his grant, over the adjacent land of the plaintiff, as one of the grantors; which land bounded the *upper meadow* on the east. That, too, was a very peculiar case, inasmuch as the grantors conveyed the close called the upper meadow, to the defendant, in their characters of trustees for the sale thereof, and the lands of the plaintiff which bounded it on the east, were held by him in his own right. And yet the court held that the defendant was entitled to a passage over those lands as a way of necessity; as he could not enjoy the lands granted to him unless he could have a right of way to it. The grantee of the ten acres now owned by Martindale was therefore, at the time of his grant, entitled to a way of necessity over the eighty-two and a half acres which still remained the property of the grantor after such grant, if the lands adjoining the ten acres on the east then belonged to a stranger, so that the grantee could not have obtained access to the lands thus granted, either from the south or east, without trespassing upon the property of others. And in selling the lands in parcels, in the inverse order of alienation, and according to the equitable rights of the parties interested, they should be sold in such a manner as to preserve that right of way, if it still exists, for the benefit of the present owner of the ten acres; or for the benefit of the purchaser of that part of the mortgaged premises, if it shall be necessary to sell these ten acres under the decree.

The direction contained in the decree upon that subject, however, is erroneous, even if it does not, in fact, reserve the right of way in favor of the wrong party. For it prejudges the question of the original existence of the right of way claimed, without anything to show whether Pearce was or was not the owner of the lands adjoining the ten acre lot on the east, at the time of the con-

veyance of that lot to him. It also provides that each parcel sold shall be sold subject to the legal and equitable right of passage over the same; without limiting the right to the owner of the dominant tenement, as such right existed between him and the owners of the servient tenement previous to the foreclosure and sale under the decree. In other words, a sale in conformity to the directions of the decree, if this direction in such decree is not so carelessly drawn as to mean nothing, would create new rights of way, as between the purchasers of the different parcels of the mortgaged premises, which did not exist between the owners of such parcels previous to the sale. Again; the right of way of necessity over the lands of the grantor, in a conveyance, in favor of the grantee, and those subseqently claiming the dominant tenement under him, is not a perpetual right of way; but it continues only so long as the necessity exists. And if the grantee of the dominant tenement, or those claiming the same under him, should afterwards, by purchase or otherwise, acquire a convenient way over his own lands to the tenement in favor of which the way of necessity previously existed, the way of necessity over the lands of the original grantor of such tenement will cease. So, if a convenient way to such tenement is subsequently obtained by the owner thereof by the opening of a public highway to, or through such tenement. The case is otherwise where the owner of land has a right of way to the same, over the premises of another, by prescription or by express grant. A way of necessity only arises upon the implication of a grant, and cannot be extended beyond what the existing necessity of the case requires. Such a right of way is only commensurate with the existence of the necessity upon which the implied grant is founded, and when such necessity ceases the right of way also is terminated. (*See Holmes* v. *Goring*, 2 *Bing. Rep.* 76.) The special direction inserted in the decree in this case, in relation to the sale of the several parcels of the mortgaged premises, subject to *a right of passage* over the same, must therefore be expunged, as having been inserted in such decree by inadvertence. The direction inserted in the decree, in relation to the order of selling the premises, must also be stricken out; except

N. Y. Life Insurance and Trust Co. v. Milnor.

that part thereof which directed the master to appoint a day for the parties, who had appeared in the cause, to appear before him, and that he should receive proofs of the order and manner of alienation of the premises. And in lieu of the special directions thus expunged, or stricken out of the decree, the usual directions in such cases must be inserted in the decree; to wit: ".that if it shall appear to the master who is to make such sale, that separate parcels of the mortgaged premises have been conveyed, or encumbered, by the mortgagor, or those claiming under him subsequent to the lien of the complainants' mortgage, such master shall sell the premises in parcels in the inverse order of alienation, according to the equitable rights of the parties, as such subsequent grantors or incumbrancers, as such rights shall be made to appear to the said master."

The provision in relation to the notice to the parties, who have appeared in the cause, to attend the master and exhibit their proofs as to the order of alienation, I have left in this decree, because that part of the decree has already been executed by the master; and a part of this application is to reverse his decision upon the evidence adduced. And for the same reason the decree must be amended nunc pro tunc, as of the time when it was originally entered : and if the decree has been enrolled the enrolment must be discharged, and the decree enrolled anew as amended. A more proper provision, however, to be inserted in a decree of this kind, as to the hearing of the parties in relation to the order of selling the different parcels, would be to direct the master, in his notice of sale, to specify the time and place when the several parties interested in different portions of the mortgaged premises, as subsequent purchasers or incumbrancers, should attend before him and be heard as to the order in which the several parcels should be sold. This would give all parties interested an opportunity to be heard upon that question; without the unnecessary expense of employing a solicitor to enter an appearance for them previous to the decree, to entitle them to notice of the time and place when and where the order of selling is to be settled by the master.

It remains to be seen what special directions are necessary to

be given to the master in this case, by a separate order to be now entered, as to the manner of selling the premises, so as to protect the rights of the parties as they now appear. Although it does not certainly appear that Pearce, the original grantee of the ten acre lot, ever was entitled to a right of way of necessity over the eighty-two and a half acres, or, if the right once existed, that it still continues in favor of the present owner of the ten acre lot, still it does not seem to be necessary to go before the master, to take any proof on the subject, before the sale. For the owners of these two parcels of the mortgaged premises will now be able to understand their respective rights so as to explain them to the bidders at the sale. It will therefore be sufficient to direct the master to put up and sell the eighty-two and a half acres, subject to such a way of necessity over the same, if any, as shall, immediately previous to such sale, exist in favor of the then owner or owners of the ten acre lot; under the original conveyance thereof to Pearce, and the subsequent grants of the same. And if it shall be necessary to sell the ten acre lot, under the decree, there must be reserved to the purchaser of that lot at the master's sale, the same right of way, if any, which shall have existed at the time of the sale of the eighty-two and a half acres, in favor of the then owner of the ten acre lot. These special directions are necessary, and they must be inserted in the master's deed, in order to preserve the supposed right of way, if it in fact exists. For as the owner of the ten acre lot is a party to the decree, an absolute sale of the eighty-two and a half acres, without reserving the right of way as it existed previous to such sale, would give the purchaser a perfect title to the premises, purchased by him, discharged of any such right.

As the twenty acres conveyed to Conger, in 1838, was conveyed subject to the payment of $400, of the complainant's mortgage, and the interest on that amount, the owner of the ten acres has the right to insist that the proceeds of the twenty acres, to the extent of the $400 and interest, or so much of such interest, as has not already been paid by Conger upon the mortgage to the complainants, as well as the whole proceeds of the eighty-two and a half acres, shall be applied in payment of the decree in

this cause, before resort shall be had to the ten acre lot. And as Ranney, at the time of the conveyance of the eighty-two and a half acre lot to Conger and Tuller, was, as the owner of that lot, entitled to have the $400 and interest charged upon the twenty acres, in part payment of the mortgage to the complainants, and in discharge of so much of the lien upon his remaining interest in the premises, he did not lose that right by the conveyance to Conger and Tuller. For the taking back of the mortgage from them at the same time, for a portion of the unpaid purchase money, preserved the right, to the extent of the moneys secured by and still due upon that mortgage. And the defendant Grant, as the assignee of the mortgage, is entitled to the same rights as between him and the present owners of both moieties of the twenty acres.

The master must therefore inquire and ascertain how much of the $400 and interest which was charged upon the twenty acres by the deed of November, 1838, has been paid by the owners of the twenty acres, towards that $400 and interest; and how much thereof still remains unpaid. And if any thing was paid upon the mortgage to the complainants, either for principal or interest, by Conger and Tuller, or by Conger alone, after they became the purchasers of the eighty-two and a half acres, without specifying whether it was paid upon account of the $400 chargeable on the twenty acres, or on account of the $600 chargeable on the eighty-two and a half acres, the master must allow four tenths of it as a payment on account of the $400 and interest charged on the twenty acres. After the master has thus ascertained how much there is still chargeable primarily upon the twenty acres, he must add thereto four tenths of the costs decreed to be paid. If that amount, with interest thereon to the time appointed for the sale, is paid to him previous to the sale, he must apply it in part payment of the debt and costs due to the complainants. And in that case he is not to sell any part of the twenty acres, unless the proceeds of the other two parcels of the mortgage shall be insufficient to pay the residue of the amount due upon the decree, and the small balance still due upon the mortgage to the defendant McComber. This last mentioned mortgage is a lien upon the whole of the mortgaged premises.

But as all the conveyances from Ranney contained covenants of warranty against it, the balance still due thereon is primarily chargeable upon the proceeds of the eighty-two and a half acres, after paying the amount due upon the decree with interest and costs; and should be deducted from the amount due upon the mortgage of Conger and Tuller to Ranney.

If the amount chargeable primarily upon the twenty acres is not paid before the sale, the master must sell that twenty acres first, and apply the proceeds, or so much thereof as may be necessary, to the payment of the amount primarily chargeable upon the twenty acres, and the four tenths of the costs. He must also sell the eighty-two and a half acres, subject to the supposed right of way as above directed, and apply the proceeds thereof or so much as may be necessary, to pay the remainder of the debt and costs decreed to be paid. And the residue of such proceeds, or so much as may be necessary, will then be applicable to the payment of what shall hereafter be ascertained to be due upon the mortgage to McComber. If the proceeds of the eighty-two and a half acres are not sufficient to pay the balance due upon the decree, the master must then sell the ten acre lot and apply the proceeds thereof or so much as may be necessary to satisfy the deficiency. And if that is not sufficient, he must then sell the twenty acre lot, if it has not already been sold.

In relation to the mode of selling the twenty acres, it is not necessary that the two undivided moieties thereof, which belong to Conger and to the heirs of Tuller, should be sold separately, in order to protect the rights of the several parties having interests therein. A sale of the whole together will save the expense of a subsequent partition; and the proceeds of the sale of the whole together can be subsequently apportioned and applied according to the equitable rights of the parties now interested in that portion of the mortgaged premises. Conger conveyed the undivided half of the twenty acres to Tuller with warranty. It Tuller therefore had paid for that half, his heirs would have a right to claim that the whole of the $400 and interest, which was a charge upon that twenty acres, should be paid out of the proceeds of the undivided half thereof which remained the prop-

erty of Conger. And their half of the twenty acres should not be sold unless the proceeds of Conger's half are insufficient to pay off and discharge so much of the complainants' debt and costs, and of the balance due on the mortgage to McComber, as is properly chargeable upon the twenty acres. It appears, however, that Tuller gave back a mortgage upon the half of the twenty acres conveyed to him, to secure the purchase money; and that this half of the twenty acres is now the only security for the payment of the amount remaining due upon that mortgage. If Conger had not assigned the mortgage, he would therefore be entitled to have an amount, of the proceeds of Tuller's half of the twenty acres, equal to what is still due upon his mortgage, applied to satisfy the proportion of the decree in this cause which is equitably chargeable upon the twenty acres. But as Conger has assigned his mortgage to Martindale, as between Conger and the assignee of that mortgage, equity requires that the whole amount justly chargeable upon the twenty acres should be paid out of the proceeds of Conger's half of the twenty acres, if such proceeds are sufficient for that purpose; so as to enable the assignee of the mortgage to obtain satisfaction thereof, if possible, out of the proceeds of the other half of the twenty acres.

There are many other parties to this suit who are not before the court on this application, and who may have equitable claims upon the surplus moneys, which may arise upon the sale of different portions of the mortgaged premises, after satisfying the amount which is payable under the decree. All that can be done now, therefore, is to direct the order of sale of the different parcels which it may be necessary to sell to pay the amount which is due upon the decree, with interest and costs. The residue of the proceeds of the several parcels sold, must be brought into court; so that the rights of the several persons interested therein may be settled, upon a reference to a master, under the provisions of the 136th rule. And the master who makes the sale must be directed to state, in his report of the sale, the amount which each separate parcel of the mortgaged premises sold by him under the decree brought at such sale.

An order must be entered directing the decree to be amended

Cagger *v.* Howard.

*nunc pro tunc,* as above directed, and containing the necessary instructions to the master to make the sale conformably to the principles herein stated, and to make his report accordingly. The master must assign a time and place for the parties to attend before him, for the ascertainment of the amount which is primarily chargeable upon the twenty acres belonging to Conger and the heirs of Tuller, on account of the $400 and interest specified in the deed of November, 1838; and he must direct notice to be given to the solicitor of Grant, as well as to the solicitor of Conger and Sprague. Grant must also pay to the solicitor of the two last named defendants their costs upon this application, as fixed by the rule of this court.