Longworth, J.
The original insurer became liable to the owner of the vessel for a total loss, but actually paid him only $12,000, being sixty per cent, of the amount of the policy, in full discharge of its liability. The whole amount of re-insurance was $5,000. Shall the re-insured company recover the full, amount of its policy, or only a pro rata part of the latter sum, at the rate of sixty cents on the dollar ?
The contract of insurance has always been regarded as one of indemnity; the object ■ being to protect the insured from any. and all damage occasioned by the happening of the loss insured against, not exceeding the amount of the policy.
Ee-insurance is thus defined by Mr. May : “ It is a contract of indemnity to the re-insured, whatever be the subject-matter, and binds the re-insurer to pay to the re-insured the loss sustained in respect to the subject insured, to the extent for which he is re-insurer, and not necessarily differing in form from an original insurance.” May on Insurance, § 11. In the ease before us the policy does not differ in form from the original policy. Although it may be true, as I am informed it is, that policies of reinsurance generally contain a condition that the loss, if any, shall be payable pro rata, at the same time and in the same manner with the re-insurance company, .yet no such condition is expressed in the policy before us. Is it to be implied ? To answer this question we must have a clear idea of the nature and object of such a contract. Parsons, in his work on Marine Insurance, vol. 1, p. 299, says: “ In all cases of re-insurance, whatever may be their ground, the re-insured stands, as to his insurers, in the same relation in which the insured, stands to him,” — “ and it may be said in general, that, wherever the insurance is not on the property of the insured, but against risks which he bears, this is in the nature of re-insurance,” (p. 303); *16 and in Phillips on Insurance, § 374, this definition is given : “ Re-insurance is a contract whereby one party, called the re-insurer, in consideration of a premium paid to him, agrees to., indemnify the other against the risk assumed by the latter, by , a policy in favor of a third party.” And it has been held that the original assured cannot assert any interest in a policy of reinsurance. Herkenrath v. Ins. Co., 1 Barb. Ch. 363.
If it be true, then, that it is the ris/c which is insured against, and the contract is intended to furnish complete indemiit/y, it is difficult to understand any reason why, when such risk has become a certainty, and the reinsured has actually sustained a loss, he is to be indemnified oAy partially and not completely ; at least to the extent of the amount named in the policy of re-insurance.
Upon this subject, there are but few adjudged cases. None are to be found in the English books. Erom a very early day re-insurance has been interdicted in that country by act of parliament (19 Geo. 2, ch. 37, § 4). Mr. Arnold states that this statute arose from the fact that re-insurance had come to be, employed as a mode of speculating in the rise and fall of premiums, and the legislature foresaw that it might be used as a cover for wager policies. 1 Arnold on Ins. 291. Andree v. Fletcher, 2 T. R. 161, is an emphatic declaration of the meaning and force of this statute. Whatever may have been the reasons for its adoption, however, it has certainly never been recognized as a part of the common law of this country. Our courts have refused to so regard it, or to find anything in reinsurance contrary to public policy and fair dealing. Upon this subject Mr. Justice Sedgwick said, in the early case of. Merry v. Prince, 2 Mass. 176, “ That a contract of re-insurance is not prohibited by the principles of the common law is admitted by the parties. It is a contract which, in itself, seems perfectly fair and reasonable, and might be productive of very beneficial consequences to those concerned in this important branch of commerce ; but because it was much abused, and turned to pernicious purposes, it was prohibited by an act of the parliament of Great Britain.” In this case he goes on to show conclusively that the principle of that statute has never found a place *17 in the insurance law of the United States. See also Merchants' & M. Ins. Co. v. Washington Ins. Co., 1 Handy, 408, 425. This will serve to explain the fact that the English reports are barren of authority upon the subject under investigation.
Since the decision of the French court of admiralty at Marseilles in December, 1848, cited in Emerigon, Traité des1 Assurance, Meredith’s translation, 202 (but no other report of which I have been able to find), it has been uniformly held, that, where the first insurer becomes insolvent, and, on a compromise with his creditors, pays only a certain percentage of the loss, the re-insurer is, nevertheless, bound to pay the re-insured the full amount of the loss to the extent of the re-insurance. The most carefully, considered case, and, perhaps, the leading case upon this subject, is Hone v. Mutual Safety Ins. Co., 1 Sandf. 137, subsequently affirmed in 2 Comstock, 235. In this case the decision of the French admiralty court is followed, and the court repeat with approval the language of Emerigon and Roccus to the effect that the re-insurer is bound to pay the whole loss which is incurred by the first insurer.
Boulay Paty and Alanzet, two distinguished modem French authors, are also cited as speaking to the same effect.
In Blackstone v. Allemannia Ins. Co., 56 N. Y. 104, the same doctrine is declared to be definitely settled. See also, to. same effect, Ins. Co. v. Cashow, 41 Md. 59; and Eagle Ins. Co. v. Lafayette Ins. Co., 9 Ind. 443.
If it be true, then, that, the re-insurer is liable to the re-assured (to the extent of the sum named in the policy) for the full amount of the loss, for which only a liability has attached to the original insurer, but which he has not paid and cannot pay on account of insolvency, how much more must it be true that such obligation exists where the re-assured has not only incurred a liability but has actually paid the full amount for which he asks indemnity % If there existed room for doubt as to how this question should be answered, the answer would be found in the decision of Ill. Mut. Ins. Co. v. Andes Ins. Co., 67 Ill. 362, which, as far as I am able to understand it, is indistinguishable from the case at bar. In that case the ele *18 ment of insolvency did not exist. The original insurer was liable to pay to the insured the sum of $6,000, in consequence of the loss .of the subject-matter insured, but actually paid. only $600, in full discharge of the liability. The amount of the re-insurance was $2,000. It was said by the court that the re-assured would have been entitled to recover $600 had there, not been a clause in the policy prorating the loss.
The claim of plaintiff in error is based upon the theory that, in respect to the subject-matter of insurance, the re-insured and the re-insurer are engaged in a common venture, and ought therefore to bear the loss in ratable proportion. In the light of the authorities cited, this view is wholly untenable.. It /presupposes a certain privity of contract to exist between the original insured and the re-insurer, the existence of 'which is denied by every authority which has spoken upon the topic. 1 am content to close this subject by quoting the language of Emerigon: “ The re-insurance is absolutely foreign to the original assured, with whom the re-insurer contracts no sort of obligabion.” Traité des Assurance, Meredith’s Translation, p. 201.

Judgment affirmed.