# South & North Alabama Railroad Co. v. Highland Avenue & Belt Railroad Co.

117 395
119 127
117 395
130 589

*Bill in Equity for the Specific Enforcement of a Right Granted by Deed.*

1. *Motion to dismiss bill for the want of equity; when should be overruled.*—On motion to dismiss a bill for the want of equity, defects of pleading, which, on demurrer would be regarded as waived, if not especially assigned, will not be considered; and such motion should only prevail when, admitting all the facts appearing on the face of the bill, whether well or illy pleaded, the complainant could have no relief whatever.

2. *Deeds; effect of proviso; when rights of third parties guaranteed.* Where, in a deed by a land company conveying to a railroad company a right of way, there is a proviso that "Any other railroad running into or through the city of B. shall have the right to run a parallel track upon and along the same right of way," such proviso creates, in favor of such other railroads as might seek, in the future, to run into, or into and through, the city of B., an equitable easement in, or right to build a parallel track upon and along the right of way granted to the railroad company by such deed, and by its acceptance of the deed, the railroad becomes bound to comply with its stipulations.

3. *Same; same; when court of equity has jurisdiction to enforce specific performance.*—Where, in a deed conveying a right of way to a railroad company, it is provided that "any other railroad running into or through the city of B. shall have the right to run a parallel

[S. & N. Ala. R. R. Co. v. Highland Ave. & Belt R. R. Co.]

track upon and along the same right of way," any railroad subseqently built into, or into and through, the city of B. is a beneficiary under such covenant; and on a bill filed by such railroad company, a court of equity has jurisdiction to enforce the specific performance of the covenant contained in the deed, by declaring such beneficiary entitled to the use of the right of way, and enjoining any interference with the exercise of the right to use it; and this is true, even though such beneficiary be not specially mentioned in the deed, and was not in existence at the time the deed was made.

4. *Same; same; same.*—Where a bill is filed to enforce the covenant contained in a deed conveying a right of way to a railroad company, which provides that "any other railroad running into or through the city of B. shall have the right to run a parallel track upon and along the same right of way," it is no objection to the equity of the bill that it does not locate the place on the right of way where the complainant seeks to lay its track; the court of equity having the power to designate the place on the right of way where the track may be located and built, if the complainant is shown to be entitled to the relief prayed for.

5. *Specific performance of a contract; when subsequent changes in condition will not prevent enforcement.*—Where a contract is fair and reasonable when it was made, it will not be deemed unconscionable and inequitable in consequence of the subsequent happening of unforeseen or unexpected events; and such changed conditions, if not due to the conduct of the party who seeks performance, will not prevent the specific enforcement of the contract.

6. *Same; same.*—Where, after the execution of a contract, such changed conditions have come about as were in the contemplation of the parties when the agreement was entered into, equity will not, on account of such changes, refuse to compel specific performance of the contract.

7. *Same; same; case at bar.*—The mere lapse of time, change in the condition and circumstances, and an increase of business of a railroad, to which was granted a right of way over certain lands, will not prevent the enforcement of the provision in a deed granting said right of way that "any other railroad running into or through the city of B. shall have the right to run a parallel track upon and along the same right of way;" the changed conditions, as shown, being such as were in the contemplation of the parties at the time of the execution of the deed, and being the very changes which it was the purpose of the parties making the agreement to aid in bringing about.

8. *Deed conveying right of way; effect of proviso; bill seeking enforcement need not offer compensation.*—Where in a deed by a land company to a railroad company conveying a right of way, there is a proviso that "any other railroad company running into or through the city of B. shall have the right to run a parallel track upon and along the same right of way," such proviso permits the use by another railroad company of a part of the right of way without compensation; and on

[S. & N. Ala. R. R. Co. v. Highland Ave. & Belt R. R. Co.]

a bill filed by another railroad company claiming the benefit of the covenant contained in the deed, and seeking to enforce its specific performance, it is not necessary for the complainant to offer, in the bill, to pay such compensation for the use of the right of way as might be allowed.

9. *Same; same; bill must show that there was sufficient unoccupied space upon which complainant's road could be built.*—A deed conveying to the railroad company a strip of land one hundred feet wide, for a right of way, subject to the limitation contained in the proviso, that "any other railroad running into or through the city of B. shall have the right to run a parallel track upon and along the same right of way," vests in the grantee a qualified fee in the land, subject to an equitable right therein in favor of other railroads which might desire, in the future, to enter said city of B., and this right is not limited to the necessities of the grantee railroad, but is as broad as its reasonable convenience and the safe and economical handling of its business, and the interest of the public might, from time to time, require, even to the extent of the exclusive use of the strip conveyed as a right of way; and, therefore, in a bill filed to enforce the specific performance of the covenant contained in said deed in favor of another railroad company claiming to be a beneficiary thereunder, it is necessary to aver that there was a sufficient unoccupied space on the right of way on which complainant's road could be built, or that the whole of the right of way was not already used and occupied for railroad purposes at the time plaintiff made its application for space thereon.

10. *Same; same; bill must show that complainant's railroad falls within the clause mentioned in the proviso.*—A deed conveying to a railroad company a strip of land one hundred feet wide, for a right of way, subject to the limitation contained in the proviso, that "any other railroad running into or through the city of B. shall have the right to run a parallel track upon and along the same right of way," contemplates the use of the right of way granted, by all railroads that might be operated in the future between the city of B. and distant points, as was the grantee railroad at the time the deed was executed, as contradistinguished from street railroads and belt railroads; and, therefore, on a bill filed to enforce the specific performance of the covenant contained in said deed in favor of another company claiming to be a beneficiary thereunder, it is necessary to show that the complainant's railroad falls within the class of "other railroads" mentioned in the proviso; and this is not done by merely showing that the complainant was authorized by its charter to construct a street railroad, a belt railroad, or a railroad connecting the city of B. with distant counties, nothing being averred to show to which of the three classes the railroad sought to be constructed along the right of way belonged.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The facts of the case are sufficiently stated in the opinion.

THOS. G. JONES, for appellant.—In order for the complainant to be entitled to the relief it prays, it must show clearly that it is a railroad that comes within the class provided for in the deed. The word railroad, can have no precise definition—its meaning depends entirely upon the connection in which the word is used. For instance, it may mean one thing in a police statute, another in a tax statute, and still another in a deed or contract.—*Bir. Min. R. R. Co. v. Jacobs*, 92 Ala. 187 ; *L. & P. R. R. Co. v. Louisville R. R. Co.*, 2 Duvall (Ky.) 179. The word we have here is not merely "railroads," but "other railroads."—*Thompson-Houston Co. v. Simon*, 20 Oregon 60.

But to entitle complainant to relief, it is not enough to show that it is one of the class of railroads mentioned in the proviso. It must go further, and show that at the time of the application, at least, there was enough unoccupied room on the strip of land on which to lay a parallel track.—*Elyton L. Co. v. S. & N. Ala. R. R. Co.*, 100 Ala. 407 ; *T. & C. R. R. Co. v. E. A. R. Co.*, 73 Ala. 444 ; *Elyton L. Co. v. S. & N. Ala. R. R. Co.*, 95 Ala. 645.

The proviso in the deed is not enforceable, because construed as a covenant, the parties in whose benefit it is intended to operate are not designated, but are uncertain and indeterminate, and not susceptible of ascertainment by a court of equity, within the rules established in such cases. The covenant is vague and uncertain, and, therefore void. It does not appear from the deed whether the covenant was intended for the public at large of the city of Birmingham, or the Elyton Land Company, and of subsequent grantees, or future railroads entering, or desiring to enter the city of Birmingham ; if the latter, it does not appear with sufficient certainty what railroads are intended to be benefitted by the proviso.

So in the case at bar, the condition imposing on the appellant a joint occupancy, when the grant is for an exclusive occupancy, and when the use to which the property is granted, clearly shows that the whole estate may be used and is intended to be used by the grantee, is repug-

[S. & N. Ala. R. R. Co. v. Highland Ave. & Belt R. R. Co.]

nant to the grant; because the right of exclusive occupancy is inseparable from the estate granted, and this repugnancy avoids the condition. Leading Cases, 1 American, Real Estate, 124; *Lord Cromwell's Case*, 2 Coke, 73; *Chapin v. Harris*, 90 Mass. 594; *Varner v. Rice*, 44 Ark. 236; 1 Greenleaf's Cruise, title 13, chap. 1, § 2, p. 496; *Bradley v. Peixoto*, 3 Vesey Jr. 324; *Emerson v. White*, 29 N. H. 482.

The bill is also defective as a bill for specific performance, in not offering or tendering the compensation for the use of the right of way necessary for the parallel track.—Pomeroy's Equity Jurisprudence, § 1407; *Daniel v. Collins*, 57 Ala. 628.

Where it is likely conditions have changed, it must appear that state of things exists which permits decree without undue harshness or oppression. Although the obligation to do the specific thing be ever so perfect, "it must appear also that the specific enforcement will work no hardship or injustice; for if that result would follow, the court will leave the parties to their remedies at law unless the granting of specific relief can be accomplished with conditions that will obviate that result."—*Willard v. Tayloe*, 8 Wallace 557; *Trustees v. Thatcher*, 87 N. Y. 311. It is a well established doctrine that the court will not decree specific performance of a contract, the result of which is to impose great hardship on either of the parties to it; and this, although the party seeking specific performance may be free from the least impropriety of conduct.—*Falcke v. Gray*, 4 Drew. 660.

A court of equity will not move a hand to specifically enforce a contract until it is first made to appear that such a decree will not work unreasonable hardship, or where the application is long subsequent to the making of the contract, that change of circumstances, where the facts show they have likely occurred, do not render such relief inequitable.—1 Story Eq. Jurisprudence, (10 ed.) § 750; *Trustees v. Thatcher*, 87 N. Y. 311; *S. R. R. v. S. V. Ry.*, 2 De Gex, M. & G. 882.

ALEX. T. LONDON, *contra*.—1. The words used in the deed are sufficient to create a trust which the defendant is bound to perform. The acceptance of the defendant would be presumed.—*Elyton Land Company v. S. & N. A. R. R.*, 95 Ala. 645; 1 Perry on Trusts, §§ 82, 259, 260.

2.　By accepting the deed, the South and North Alabama Railroad was bound to comply with its stipulations.—*Whitney v. Union Ry.*, 11 Gray, 359; *Maine v. Cumston*, 99 Mass. 317; *Barrow v. Richard*, 8 Paige, 356; 2 Devlin on Deeds, 1074, 1283; *Joy v. St. Louis*, 138 U. S. 1.

3.　Even though a party cannot sustain an action at law to enforce the stipulation as a covenant or contract, equity will enforce the agreement.—*Whitney v. Union Ry.* 11 Gray, 359; *Joy v. St. Louis*, 138 U. S. 1; *Hills v. Miller*, 3 Paige, 254; *Watertown v. Cowen*, 4 Paige, 510; *Barrow v. Richard*, 8 Paige, 351.

The right of the beneficiary to sue in equity is clearly recognized.—*Bleeker v. Bingham*, 3 Paige, 246.

4.　Even where the promise is in favor of a third person, he may sustain an action at law.—*Halsey v. Reed*, 9 Paige, 446; 1 Jones on Mort., §§ 749, 750, 758; 3 Pomeroy's Eq., § 1206; *Burkham v. Mastin*, 54 Ala. 122; *Coleman v. Hatcher*, 77 *Ib*. 217.

5.　The jurisdiction of equity to protect and enforce equitable easements is expressly recognized.—Wash. on Easements, 576; *Parker v. Nightingale*, 6 Allen, 241; *Hubbell v. Warren*, 8 Allen, 173; *Gilbert v. Pettler*, 38 Barb. 513; *Bronwer v. Jones*, 23 Barb. 153; *Tallmadge v. E. R. Bank*, 26 N. Y. 105; *St. Andrew's Ch. Appeal*, 67 Pa. St., 512, 518; *Western v. McDermott*, L. R. 1 Eq. Cas. 499; 2 Ch. Ap. 74.

6.　By the conveyance the legal title passed to the South and North Alabama Railroad, charged with the trust or qualification expressed in the quotation, and it can not hold the land and refuse to perform the conditions attached.—*Joy v. St. Louis*, 138 U. S. 1, and cases cited, p. 53: *C., R. I. & P. R. R. v. U. P. R. R.*, 47 Fed. Rep. 15; *U. P. R. R. v. C., R. I. & P. R. R.*, 51 Fed. Rep. 309.

BRICKELL, C. J.—This was a bill filed by the Highland Avenue & Belt Railroad Co. against the South & North Alabama Railroad Co., and is in the nature of a bill for the specific performance of a covenant contained in a deed, executed in the year 1872, by which the Elyton Land Co., the founder of the present city of Birmingham, conveyed to the South & North Alabama Railroad Co. a strip of land one hundred feet in width

for the right of way of its railroad through the city, in consideration of one dollar and the building of the railroad through the lands of the grantor. The *habendum* clause of the deed reads: "To have and to hold the same to themselves, and for their own proper use for the right of way of their railroad forever, or so long as the same may be occupied or used by the party of the first part, (the railroad company), or their successors or assigns for the purposes aforesaid. Provided, however, that any other railroad running into or through the city of Birmingham shall have the right to run a parallel track upon and along the same right of way." The bill prays for a decree declaring the complainant entitled to build a parallel track on said right of way; that the defendant be required to designate the place where such track may be built, and upon its failure for a reasonable time to do so, that it be referred to the register to ascertain on what part of said right of way said track may be built; and for an injunction to restrain the defendant from interfering with the construction of said track. The Elyton Land Co. at the time of the execution of the deed had just founded the present city of Birmingham, and was the owner of all the land surrounding the right of way and upon which the city is now built. The appeal in this case is from a decretal order overruling a motion to dismiss the bill for want of equity, and several grounds of demurrer interposed to the bill.

Counsel for the defendant, besides relying upon the want of equity in the bill, urge the following objections to its sufficiency: *First*, because it does not show that complainant's railroad falls within the class of railroads intended to be benefitted by the deed. *Second*, because it does not show that the right of way was not already necessarily used and occupied for railroad purposes at the time the complainant demanded the right to build a parallel track thereon. *Third*, because it does not locate the place where complainant seeks to lay its track. *Fourth*, because the bill does not tender compensation. *Fifth*, because the *proviso* contained in the deed is void for repugnancy to the other clauses of the deed.

In considering the motion to dismiss the bill for want of equity the attention must be directed wholly and exclusively to the equities of the bill, not to its frame, or

the want or misjoinder of parties, or other matter, which, if a demurrer were interposed, would be regarded as waived if not specially assigned. The motion should prevail only when, admitting all the facts apparent on the face of the bill, whether well or illy pleaded, the complainant can have no relief whatever. If it is apparent upon a proper statement of the facts and an appropriate prayer, that equitable relief may be obtained, the motion should be overruled and the respondent put to his demurrer.—*Hooper v. Sav. & Mem. R. R. Co.*, 69 Ala. 533.

Assuming, so far only as is necessary in the determination of the equity of the bill, that the railroad of the complainant is such a railroad as was in the minds of the parties at the time the deed was executed, and such as was intended to be benefitted by the provision securing to "other railroads" the right "to run a parallel track upon and along the same right of way," we can not doubt that the bill contains equity. If its averments do not show clearly and affirmatively the title of complainant to the relief asked as a beneficiary under the deed, they may be aided by amendments. It does not affirmatively show, and we do not judicially know, that its railroad is not such as was in the contemplation of the parties.

In the case of *Elyton Land Co. v. South & North Ala. R. R. Co.*, 100 Ala. 396, we had occasion to construe this same deed for the single purpose of determining whether the *proviso* contained therein was technically a condition, the breach of which by the grantee's refusal to allow another railroad to build a parallel track on the right of way would cause a forfeiture and authorize the grantor to recover possession. We there decided that it was not a condition but a covenant or limitation. Whether it be construed as a covenant or as a limitation is immaterial; its effect upon the rights and obligations of the parties thereto is the same. It operated to create in favor of such other railroads as might seek in the future to run into, or *into* and through, the city of Birmingham, an equitable easement in, or right to build a parallel track upon and along, the right of way granted to appellant, and by its acceptance of the deed, appellant became bound to comply with its stipulations.—*Joy v. St. Louis*, 138 U. S. 1; s. c, 45 Am. & Eng. Rail.

Cas. 655; *Chicago, St. P. & K. C. R'y. Co. v. Kansas City, St. J. & C. B. R. R. Co.*, 52 Fed. Rep. 179; *Whitney v. Union R'y. Co.*, 11 Gray, 359.

That a court of equity has jurisdiction, at the instance of a beneficiary under such a covenant, to enforce the specific performance of the covenant by declaring such beneficiary entitled to the use of the right of way and enjoining any interference with the exercise of the right to use it, even though such beneficiary be not specifically named in the agreement and was not in existence at the time it was made, we regard as settled by the first two cases above cited. In *Joy v. St. Louis*, *supra*, there was a tripartite agreement between the commissioners of a public park near the city of St. Louis, the St. Louis County Railroad Co. and the St. Louis, Kansas City & Northern R. Co., by which the park commissioners gave to said two companies a part of the right of way through said park, and the railroad companies bound themselves to permit other railroads, not named in the agreement, to use the right of way upon paying such fair compensation as might be agreed upon by such companies. One of the original companies forfeited its rights, and the other took possession of the right of way, built its tracks thereon, and operated its road over it, occupying, in the course of time, the whole of the right of way with its tracks. Subsequently the St. Louis, K. C. & Colorado R. Co., desiring to enter St. Louis, demanded of the receivers of the company in possession permission to run its cars over the right of way and over the tracks of said company, claiming the right under the provisions of said agreement, to which it was not a party; and its claim being denied and demand refused, it then filed a bill praying the court to enjoin and restrain respondent from interfering with its use of said right of way and tracks. It was held, both in the circuit court—29 Fed. Rep. 546 —and in the United States Supreme Court on appeal, that the covenant to permit other railroads to use the right of way created an equitable easement in favor of such railroads not only in the right of way, but also in the tracks; that it became binding on the defendant company by its acceptance thereof; that it was sufficiently definite in its terms to be specifically enforced; and that there was mutuality of remedy between the

parties to the suit. It was said in the opinion that it would be inequitable to permit the defendant company to use the right of way through the park and at the same time deprive the city of St. Louis, the trustee of the public, of the benefit of the use by other railroad companies of the right of way. It was further said: "Railroads are common carriers, and owe duties to the public. The rights of the public in respect to these great highways of communication should be fostered by the courts, and it is one of the most useful functions of a court of equity that its methods of procedure are capable of being made such as to accommodate themselves to the development of the interests of the public, in the progress of trade and traffic, by new methods of intercourse and transportation. The present case is a striking illustration. Here is a great public park, one of the lungs of the city, which, in order to maintain its usefulness as a park, must be as free as possible from being serrated by railroads; and yet the interests of the public demand that it be crossed by a railroad. But the evil consequences of such crossing are to be reduced to a minimum by having a single right of way and a single set of tracks to be used by all the railroads which desire to cross the park. These two antagonisms must be reconciled, and that can be done only by the interposition of a court of equity, which thus will be exercising one of its most beneficent functions." While the public is not complaining here and is not a party to the agreement, yet we think a broad view of the case, the subject-matter of the contract, the situation in which the parties to it stood with reference to the future public interests, the object sought to be accomplished by the grantor, known to the grantee, require a like consideration of the interests of the public; not for the purpose of overriding the known intention of the parties, but for the purpose of establishing the equities of the beneficiaries under the agreement in accordance with that intention, and determining and framing the character of the relief which will best accomplish the original purpose of the agreement, and at the same time subserve the public interests.

In *Chicago, St. P. & K. C. R'y. Co. v. Kansas City, St. J. & C. B. R. Co.*, 52 Fed. Rep. 178, the city of St. Joseph had passed an ordinance granting to the Kansas

[S. & N. Ala. R. R. Co. v. Highland Ave. & Belt R. R. Co.]

City, St. J. & C. B. R. Co. a right of way over certain streets, the ordinance containing a provision that said railroad "shall at all times hereafter be open to the free use and right of all other railroad companies to run their cars, locomotives and trains over and upon the said St. Joseph and Council Bluffs railroad." Upon a bill filed by another railroad company to compel the company in possession of the right of way to permit it to use the same, the court sustained the bill and granted the relief by enjoining any interference with such use. It was held that the ordinance, by its acceptance, became the contract of the parties, and that "a court of equity has power to enforce a contract between parties of the same nature as those which we know, as a matter of general knowledge, railroad companies are constantly making and keeping." It was further said : "With reference to the portion of the road down to George Alley, it seems to me immaterial that there was in the beginning but one track, and that that is now so occupied that it would not be safe to permit its use by another company. The defendant has built other tracks on that right of way, and there is no question under the evidence but that some of these tracks might be safely used by the complainant without prejudice to the business of defendant."

We do not wish to be understood as even intimating that, under the terms of this agreement, another railroad company, desiring to enter Birmingham, would be entitled to use the tracks of the defendant, even though the whole of the right of way should be occupied at the time. We are determining only the motion to dismiss the bill for want of equity, and we think all the questions presented by argument of counsel going to the equity of the bill alone are settled by the cases above cited.

It is urged by counsel that the bill does not locate the place on the right of way where complainant seeks to lay its track, and for this reason there can be no specific performance, but this objection can not be sustained. The grantor in the deed was endeavoring to secure for future railroads the general right to use the right of way set apart by it and granted to defendant, and not to fix mere details as to its use by such roads, such as the precise location on the strip of each track to be built in

the future. It could not be known at the time the agreement was made how much or what part of the right of way, the necessities of the defendant's future business and the convenience and safety of its handling would require for its use. It must be supposed that the grantor contemplated that the defendant would, in a proper case, comply with its agreement to permit other railroads to use the right of way, and that, upon application for its use being made, it would agree with the applicant as to the precise location of its track, both parties having due regard to the defendant's business and convenience at the time. It could not have been contemplated that defendant would arbitrarily deny the right of other companies to use the right of way and thereby defeat the object sought to be accomplished by the agreement. The defendant, having denied complainant's right to build the track, upon its request to have a place designated and assigned to it, there could, of course, be no agreement between them as to its location. Under these circumstances, a court of equity has power to designate the place on the right of way where the track may be built. This court has expressly decided this point in *Lide v. Hadley,* 36 Ala. 627.

Again, it is contended that the lapse of time, and the change in conditions and circumstances that has taken place since the agreement was made, are such that the specific performance of the agreement will work hardship and injustice, and that when this is the case equity will withhold such relief. It is true, the bill informs us, and we judicially know, that such changes have taken place, that a great and growing city has sprung up around the right of way, and that the business of the defendant has greatly increased in consequence, requiring greater track facilities within the city for its safe and convenient handling; but we are not informed of the extent of this increase, nor what would be the effect of the enforcement of the contract. If a contract is unfair and oppressive, equity will not enforce it. But the rule with respect to changed conditions, is, that if the contract was fair when it was made, it will not be deemed otherwise in consequence of the subsequent happening of unforeseen and unexpected events, not due to the conduct of the party who seeks performance.— Waterman on Spec. Perf., § 165; Fry on Spec. Perf.,

§ 252; *Homan v. Stewart*, 103 Ala. 652; *Willard v. Tayloe*, 8 Wall. (U. S.) 557; *Rutland Marble Co. v. Ripley*, 10 Wall. (U. S.) 339. It is furthermore held that when such changed conditions as have come about were in contemplation of the parties when the agreement was entered into, equity will not, on account of such changes, refuse to compel specific performance.—*Trustees v. Thacher*, 87 N. Y. 311. Now, these changed conditions of which we are informed are precisely such as were in the contemplation of the parties to this agreement. They are, in fact, the very changes which it was the purpose of the parties, in making the agreement, to aid in bringing about,—the conversion of an open field into a city of commercial and manufacturing importance, which would enrich the grantor and increase the business and revenues of the grantee.

It was not necessary for the complainant to offer in the bill to pay such compensation for the use of the right of way as might be allowed. It is not the use of the defendant's tracks or property that is sought, but the use of a portion of the right of way on which to build a track. We think it was clearly the intention of the parties that this use should be allowed without compensation. It was not only the use of the right of way, but the free use of it, that was to be held out by the grantor as an inducement to the running of other railroads into the city.

In what has been said above we have had in view only the determination of the equity of the bill. Some of the points discussed were not raised by any of the grounds specifically assigned in the demurrer, and we have considered them only with reference to their bearing on the motion to dismiss for want of equity. There remains to be considered two objections to the sufficiency of the averments of the bill which were specifically assigned.

The first of these objections is, that the bill fails to show that there is any unoccupied space on the right of way on which complainant's railroad can be built, or that the whole of the right of way was not already used and occupied for railroad purposes at the time complainant made its application for space thereon. The deed conveyed to the defendant the entire one hundred feet "for the right of way of their railroad," subject to

the limitation contained in the proviso, that other railroads running into, or into and through, the city of Birmingham should have the right to build a parallel track thereon. The *habendum* clause is, "to have and to hold the same to themselves and for their own proper use for the right of way of their railroad forever, or so long as the same may be occupied or used by the party of the first part, or their successors or assigns for the purposes aforesaid. Provided, however, that any other railroads running into or through the city of Birmingham shall have the right to run a parallel track upon and along the same right of way." The deed vested in the defendant a qualified fee in the land, subject to an equitable easement, or right therein,—for, technically speaking, it is not an easement,—in favor of other railroads which might desire in the future to enter Birmingham. The qualification as to the character of the estate granted is, that land be used as a right of way for railroad purposes. The effect of the proviso was not to limit the defendant's use of the right of way to that part upon which its track was then laid, or to any particular part of the strip. It is obvious the parties contemplated the growth of a large town on the site, and the development of commercial and manufacturing interests in the vicinity to an extent that might require greater facilities for handling defendant's business in the city than were necessary when the deed was executed; and although the coming of other railroads was anticipated and therefore provided for, yet their coming was a contingency which might or might not happen, or the happening of which might be best delayed until the necessities or reasonable convenience of the defendant should require the use and occupancy of the whole right of way. We are of the opinion, therefore, that, as we said in *Elyton Land Co. v. South & North Ala. R. R. Co.*, 95 Ala. 645, in construing another agreement between the same parties, "the parties are to be treated as having contemplated the possibility of the defendant's acquiring the exclusive use of the strip as a right of way for its railroad alone,"—exclusive, however, only in the event that the growth of its business and consequent demand for greater track and other facilities for handling the same, should become such as to render a participation in the use of the right of way by other rail-

roads either unsafe or so greatly inconvenient and embarrassing as to make it detrimental not only to the defendant's interests, but to the interests of the public as well. The defendant was to have the first right, and this right was not limited to its necessities, but was as broad as its reasonable convenience, and the safe and economical handling of its business, and the interests of the public, might from time to time require. Subject to this prior right, other railroad companies were to have the use of the right of way for the purposes specified in the deed.—*Joy v. St. Louis*, 138 U. S. 1, *supra*.

Thus construing the deed and the rights of the grantee growing out of it, do the rules of pleading require an averment in a bill to enforce the specific performance of the covenant in favor of one claiming to be a benificiary thereunder, that there is space on the right of way on which a parallel track can be built? The bill avers that the strip is one hundred feet in width, and that when the defendant took possession of the right of way it "constructed *a track* on said right of way so granted in the center thereof." We judicially know, and the bill informs us, that a populous city has grown up along the right of way, and also, perhaps, that the defendant's railroad has become a part of a great public highway engaged in an interstate as well as local traffic, and that such traffic has greatly increased during the twenty years that have elapsed between the execution of the deed and the filing of this bill. True, the bill does not inform us, we do not judicially know, and it cannot be inferred from any facts averred, what has been the real extent of this increased business—whether it has been such as to affect the contingencies upon which depends the defendant's right to the exclusive use of the right of way. Yet, if we have properly construed the deed and the rights of the grantee arising out of it—if by its terms, interpreted in the light of the circumstances surrounding the transaction, the situation of the parties, their motives, and the objects intended to be attained, the defendant might legally acquire the right to the exclusive use of the strip—then it is manifest the right of any other railroad to use the same was contingent upon the non-existence, at the time it desired to exercise the right, of those circumstances which would vest in the defendant the exclusive use. The deed must be read,

therefore, as though, by express terms, it conferred upon other railroads only a contingent right to build a parallel track ; and hence the bill must be read as though it expressly averred that complainant's title to specific performance was originally a contingent one, depending upon the performance of some act or the happening of some event. When this is the case the rules of pleading require a clear averment that complainant's title to relief had become perfect by the happening of the contingency upon which it was to vest. The complainant must show not only an interest in the subject-matter, but an actual existing interest and a proper title to institute a suit concerning it, and all other matters essential to the right to relief. Where it appears that in order to complete his title to the subject of the suit or to the relief he seeks, some preliminary act is necessary to be done, the performance of such preliminary act must be averred in the bill.—1 Dan. Ch. Prac., 362, 363, 369 ; *Cockrell v. Gurley*, 26 Ala. 408 ; *Bogan v. Camp*, 30 Ala. 280 ; *Seals v. Robinson*, 75 Ala. 368 ; *Rapier v. Gulf City Paper Co.*, 64 Ala. 340. We are of opinion that the bill is defective for want of an averment that there was space on the right of way on which to build a parallel track, and that the demurrer as to this ground should have been sustained.

The application of the same rules of pleading forces the conclusion that the bill is also defective in failing to show that complainant's railroad falls within the class of "other railroads," mentioned in the proviso. We consider this objection raised by the fourth ground of demurrer interposed to the original bill. Complainant claims title to the relief prayed for as a beneficiary under a contract between third parties, in which it is not named or in any manner designated, except by the general term "other railroads," for whose benefit the right sought to be established in favor of complainant, was reserved. As was said in *Cockrell v. Gurley, supra*, "it is a principle of universal application in pleading, founded on reason and good sense, that the title of the complainant should be stated with sufficient certainty and clearness to enable the court to see clearly that he has such a right as warrants its interference, and the defendant to be distinctly informed of the nature of the case he is called upon to defend." If this right of way

had been conferred upon the defendant, in the same terms, by a statute or ordinance, it is clear that one who claimed under such statute or ordinance, would be required to bring himself within its beneficial provisions.—*Eberhardt v. Gilchrist*, 11 N. J. Eq. 170. So, if a trust should be created for the benefit of individuals of a particular class, one who claimed under the instrument would obviously be required to bring himself within the class intended to be benefitted ; otherwise no title to relief would be shown. From a careful inquiry into the intention the parties to the deed, as manifested by the deed itself, and all the circumstances surrounding its execution, both such as are averred in the bill, and such as are matter of common knowledge, we are satisfied that a particular class of railroads was in the minds of the parties at the time, and was intended to be benefitted, and that this was a great class of railroads which was understood at the time to be embraced in the term as commonly used, and to which the defendant's railroad belonged. The bill avers that "under and by virtue of the powers conferred upon it by its said charter, it is running a railroad into and through the city of Birmingham." This is the only averment tending to show the character of the railroad. The charter, a copy of which is attached to the bill as an exhibit, confers upon complainant the power to purchase from the Elyton Land Co. all its railroad property and franchises, "including the line known as the Belt Railroad ;" also the power to complete and operate the same, and to construct other lines of railroad "in and along the streets, avenues, alleys and public grounds of the city of Birmingham, within the county of Jefferson and counties adjacent thereto, and to extend the same into and through any other counties in this State ;" also, the power "to construct, equip, own, use and operate street railroads on and along the streets, avenues, alleys and public grounds within the corporate limits of said city of Birmingham and territory adjacent thereto." It will be observed that complainant has the power to construct and operate a street railroad, a belt railroad, and a railroad connecting Birmingham with distant counties in the State, such as was the defendant's railroad at the time the deed was executed. Which is it constructing, and for which is it endeavoring to obtain the use of this right of way? It

can not be inferred that it is constructing a railroad of the latter class simply because its charter gives it the power to do so. Matters essential to a complainant's right to relief must not be made to depend upon inference, but must be clearly and accurately stated.—*Seals v. Robinson, supra.* For aught that appears to the contrary, complainant is seeking to build this parallel track for use as a part of its street railroad, or as a part of its belt railroad. If the bill affirmatively showed this to be the fact, we would be forced to hold that it was without equity. In *Louisville &c. R. R. Co. v. Louisville R'y. Co.*, 2 Duv. (Ky.) 175, under a statute prescribing that no other railroads than that of a certain corporation should be constructed within specified limits; and that any other railroads which might be constructed in any direction should connect with the road of such corporation on reasonable terms, it was held that an injunction could not be granted requiring a street railway to connect with such railroad. A "belt railroad," as it is now commonly known, is a railroad encircling a city, or other restricted territory, intersected by other railroads, not having a common right of way into the territory, for the purpose of transferring and switching cars from one railroad to another with which it is not otherwise connected, or of transferring cars between such railroads and industrial plants located in the neigborhood of, but not on such railroads. Such connections are usually made by the belt railroad in the suburbs, or near the outskirts, of the city. If all the railroads entering the city or territory should use a common right of way for effecting entrance, there would be no use for a belt railroad, except for the transfer of cars to and from such industrial establishments as were not located on the right of way, since said railroads would themselves be connected the one with another. There would be no occasion, therefore, for such belt railroad to use the common right of way through the city or territory. Now, we think it is obvious that the parties to the deed contemplated the use of the right of way granted therein by all the railroads that might desire to enter Birmingham at any time in the future prior to the happening of those circumstances which, as pointed out above, should give to the defendant and other railroads then occupying it the right to exclusive use thereof. Hence, even

[McGhee & Fink, Receivers, &c. v. Reynolds.]

though belt railroads had been commonly known in the State at the time—and we think they were not—it is entirely improbable that the parties had in view the probabilty, or even possibility, of the right of way being used by such railroads, when the purpose of the agreement was to provide a common right of way for, and consequent facilities for connection between, all railroads operating between Birmingham and distant points.

It results from what has been said, as it appears that complainant's railroad may belong to either one of three classes, only one of which can maintain a suit to enforce the specific performance of the covenant, and as the bill does not show to which of the three classes it belongs, and must be construed most strongly against the pleader, no clear title to relief is shown,.and the demurrer should have been sustained.

For the errors pointed out, the decree of the lower court must be reversed and the cause remanded.

Reversed and remanded.