SMILES *vs.* HASTINGS and SIBLEY.

Where the heirs at law of a person dying seised of a tract of land, which descended to them as tenants in common, caused the same to be subdivided into nine lots, and a map of such subdivision to be made, by a surveyor, and partitioned the same among themselves, by mutual conveyances and releases of the lots, to each other, which mentioned and referred to the said map, on which a road was laid down as running through the center of the tract; and subsequently two of the heirs sold and conveyed their respective lots to purchasers, by deeds referring to the map and to the road so laid out upon it; *Held* that the map was part and parcel of the several conveyances, and that such conveyances were to be taken and deemed as subject to, and controlled by it. That the road being laid out, upon such map, and the lots bounded by it, each grantee was entitled to the enjoyment of the easement thus conveyed, and that he and his grantees could recover damages for its obstruction by the others, or by persons claiming under them.

*Held also,* that this right of way was a servitude to which each lot was equally subject, and was of the same character and force as if created by express grant. And that by virtue of the release and conveyance of a lot to either of the heirs, by its number, on the making of the partition, the grantee became entitled, as part of the grant, to a right of way over the road laid down on the map, as an easement; which, being appurtenant to the land, passed to the grantees of such heir.

*Held further,* that in case either of the lots in the subdivision was so situated that there was no access to it by any public road or any other means, without passing over the lands of other persons, a right of way passed to the grantee, over the land of his grantors, as a way of necessity, incidental to the grant, and without which the grant would be useless. And that such right, being appurtenant to the land, would pass to persons deriving title from the original grantee.

An easement acquired by deed can never be lost by non-user. To be thus lost, it must have been acquired by use.

In an action for obstructing a right of way, the plaintiff is not to be limited to the recovery of nominal damages.

MOTION by the plaintiff for a new trial, or judgment on a verdict in his favor, taken subject to the opinion of the court, for six cents damages. The case discloses the following facts : Upon the death of John Atkinson, sen., prior to the year 1828, the title in fee to the whole of the two large lots, numbers 33 and 25, of the second division lots in township No. 13, in the 7th range of townships, now in the town of Irondequoit,

Smiles *v.* Hastings.

ĩn the county of Monroe, descended to his heirs at law, as tenants in common, who, in October, 1828, caused the whole tract, consisting of the said two lots 33 and 25, and containing over 400 acres of land, to be subdivided into nine smaller lots, numbered from one to nine inclusive, by Valentine Gill, and a map of said subdivision to be made by said Gill. This map shows clearly and distinctly the size, shape, situation and location of each of the lots, as well the two original large lots—numbers 33 and 25—as the nine small lots made by the subdivision, and the boundary lines, with their courses and distances, of each.(*a*) The map represents the whole tract, consisting of the two original lots, 33 and 25, as being in the shape of a *rhombus*, with its N. E. and S. W. corners forming equal acute, and the S. E. and N. W. corners equal obtuse angles, and surrounded on the east, west and north sides by a road or roads, and with an east and west road running through the center of the tract, from the road on the west to that on the east side of the tract, and nearly equi-distant from the north and south lines thereof. Each of the nine small lots is

(*a*) MAP OF THE PREMISES.

Lot 33 contains 213 acres, and lot 25 contains 205 acres, by a scale on the original map of three chains to the inch. The above is very much contracted from the surveyor's diagram.

also in the shape of a *rhombus.* Number 9 contains $49\frac{25}{100}$ acres, and lies in the southeast corner of the tract, extending north to the east and west road through the center of the tract, as represented on the map ; its north and south lines being 18 chains and 40 links, and its east and west lines being 29 chains and 60 links in length. No. 8 contains 57 acres and adjoins No. 9 on the west, and also extends north to the said east and west road ; its length, north and south, being the same as No. 9, and its north and south lines being 19 chains in length. No. 3 contains $52\frac{45}{100}$ acres, and extends from the road on the west side of the tract to No. 8, which bounds it on the east ; its east and west lines are 14 chains and 60 links, and extends north to the east and west road, through the center of the tract. Lot No. 4 is of the same size and shape, and contains the same number of acres as No. 3, and lies directly north of it, the said east and west road, as laid down on the map, running between them.

After the said subdivision of this tract of land, and prior to the first day of December, 1828, the children and heirs at law of the said John Atkinson, deceased, made partition thereof, and on such partition conveyed and released to William Atkinson, one of said heirs, lot No. 8 in the said subdivision ; and on the 8th day of December aforesaid the said William Atkinson conveyed the same lot No. 8 to Janna Holton, describing the same by metes and bounds, as subdivision No. 8, in which description the east line is mentioned as running from the southwest corner, north, &c. on the west line of the lot, 29 chains and 50 links, to the center of a contemplated road to run east and west ; thence east 19 chains ; thence south, &c. 29 chains and 50 links, to the south line thereof ; thence east 19 chains, to the place of beginning ; reference being made to a map by Valentine Gill, of said great lots 33 and 25.

The plaintiff derives title by sundry mesne conveyances from Janna Holton, to the east 30 acres of lot No. 8.

On the 10th of March, 1830, Eliza S. Atkinson, another of the said children and heirs at law, conveyed said lot No. 3 to Nicholas Toody and James Welch by deed, in which the lot

is particularly described, as being known as subdivision No. 3, and in which the north line is described as running on the division line between subdivisions three and four ; *and reserving the right of a road two rods in width on the division line between subdivisions three and four*, containing, &c.

The defendants derive their title to said lot No. 3 by sundry mesne conveyances from Toody and Welch. In all the conveyances, including that to the defendants, the same reservation in respect to the road is made.

On the 22d of November, 1830, the said Eliza S. Atkinson conveyed to James Waring lot No. 4, as *being known and distinguished on a map made by V. Gill, as subdivision No. 4 in said lot No.* 33, and then describing it by courses and distances. Soon after the said deed to Toody and Welch, they entered into the possession of lot No. 3, and enclosed and occupied the strip of land laid down on the map as a road between lots three and four. The possession and occupancy of the land they conveyed had been continued to the time of the commencement of this suit. At the time of the deed to Toody and Welch, and down to the time of the purchase by the plaintiff, which was in the year 1849, lot No. 8 was unoccupied, and was wild and uncultivated. The plaintiff took possession of 30 acres, owned by him, in the year 1851, and required the defendant to open, or suffer to be opened, the road as laid down on the map, or a road two rods wide, from the highway running upon the west side of the whole tract, to the said lot No. 8, owned by the plaintiff, and the defendants refused such request.

The case further states that the road, as laid out upon the map, was intended to be four rods wide, and that no part of it has ever been opened. The plaintiff's counsel then offered evidence to prove that he had sustained damages by reason of the obstruction of the way in question by the defendants. The defendants' counsel objected to the giving of any evidence on that point, and the judge sustained the objection, and decided that the plaintiff was only entitled to nominal damages, to which the plaintiff's counsel excepted. The judge then

directed a verdict to be taken for the plaintiff, with six cents damages, subject to the opinion of the supreme court, upon a case to be made by the plaintiff.

*S. Mathews*, for the plaintiff.

*M. S. Newton* and *O. Hastings*, for the defendants.

*By the Court*, WELLES, J. The subdivision, map and partition of this whole tract, consisting of the original lots numbers 33 and 25, were the acts of all the heirs at law of John Atkinson, sen., deceased, and they and their grantees are bound by those acts. The map was, in fact, part and parcel of the several conveyances mentioned in the case, as they all, either by express words or unavoidable implication, refer to and recognize it; and it is impossible to locate the lands described in them without resort to it. It exhibits the road in question as plainly and distinctly as it shows any thing else. The conveyances of lots No. 8 and No. 3, by William and Eliza S. Atkinson, through which the parties respectively derive their titles, must be taken and deemed as subject to, and controlled by, the map. These lots, Nos. 8 and 3, are bounded on the north by this road, and the owners of neither of them is at liberty to refuse to the other the enjoyment of the easement contemplated by the parties to the subdivision and partition of the whole tract. It is a servitude to which each is equally subject, and is of the same character and force as if created by express grant.

By virtue of the release and conveyance to William Atkinson, of lot No. 8 by its number, on the partition between the proprietors, he became entitled, as part of the grant, to a right of way over the road laid down on the map, as an easement, which, being appurtenant to the land, passed to the plaintiff by virtue of the conveyances through which he derives title to his part of the lot.

Under the circumstances of this case, a right of way passed by the conveyance to William Atkinson, over the land of his

Smiles v. Hastings.

grantors, as a way of necessity, incidental to the grant, and without which the grant would be useless. The situation of lot No. 8 upon the map shows that there was no access to it by any public road, or any other means, without passing over the lands of other persons. The authorities referred to by the plaintiff's counsel on this point, and many others, clearly establish this proposition. (*G. & Whately on Easements*, 54 *to* 57. 3 *Kent's Com.* 419 *to* 433. *Shep. Touch.* 89. *Holmes* v. *Seely*, 19 *Wend.* 507.) And this right, being appurtenant to the land, passed to the plaintiff. Where a right of way is thus implied from the necessity of the case, its particular locality is to be determined and assigned by the grantor in a reasonable place and manner; and if he declines, the grantee will be permitted to make the selection. In this case, the way or road laid down on the map may be reasonably regarded as settling before hand, by all the owners of the whole tract, the place where the right should be enjoyed. The case shows that Elizabeth S. Atkinson, one of the tenants in common, and under whom the defendants claim, recognized and reserved this right in the particular place claimed, in her deed to Toody and Welsh; and the same reservation and recognition was preserved in all the conveyances through which the defendants derive their title from her. This, however, cannot benefit the plaintiff *as a reservation*, but it shows the defendants knew of, and took their title subject to, this right of way.

This right of way has not been lost by non-user or adverse possession. It was acquired by force of the deed from the proprietors to William Atkinson. An easement acquired by deed can never be lost by non-user. To be thus lost, it must have been acquired by use. The doctrine of extinction by disuse, does not apply to servitudes or easements created by deed. In the one case the mere disuse is sufficient; but in the other, there must not only be disuse by the owner of the land dominant, but there must be an actual *adverse user* by the owner of the land servient. See *Angell on Water Courses*, ed. of 1850, *p.* 269, § 252, the language of which, nearly, I have appropriated. See also *Arnold* v. *Stevens*, (24 *Pick.* 106;)

and *White* v. *Crawford*, (10 *Mass. Rep.* 189.) And there was no adverse possession because, 1. The plaintiff and those under whom he claimed had no occasion to assert or use his right until he took actual possession of his land. (*Arnold* v. *Stevens, supra. Doe* v. *Butler*, 3 *Wend.* 149.)

We are of the opinion, therefore, that the plaintiff established his right to the easement claimed; and as the defendants refused to open the road, or to allow it to be opened, they are liable in damages therefor to the plaintiff.

It seem to us, also, that the justice before whom the action was tried, should not have limited the plaintiff to nominal damages. The plaintiff offered to prove that he had· sustained damages by reason of the obstruction of the way in question by the defendants, which the justice refused; and held, as matter of law, that the plaintiff was entitled only to nominal damages. We are to intend that the evidence offered by the plaintiff was legal evidence of damages, and there appears no sufficient reason why it was excluded. That there was a por-·tion of lot No. 8 which the plaintiff did not own, is not a sufficient reason. It does not appear that the owner of that portion would have objected to the opening of the way adjacent to his land, and it might have been that it was more convenient for the plaintiff to commence opening the road from the west end. Again, it would be of no use to the plaintiff ·to open the road east of the defendants' land, so long as they refused to allow him to open it along the north end of theirs.

We think, therefore, that the plaintiff is entitled, either to judgment in his favor on the verdict, with costs, or to a new trial, with costs to abide the event, at his election.

Ordered accordingly.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong, Welles* and *Smith*, Justices.]