## LIDE *vs.* HADLEY.

[BILL IN EQUITY TO ESTABLISH AND QUIET TITLE TO RIGHT OF WAY.]

| 36 | 627 |
| 98 | 408 |
| 36 | 627 |
| 117 | 406 |

| 36 | 627 |
| 130 | 268 |

| 36 | 627 |
| 140 | 370 |

1. *Right of way appurtenant, and its incidents.*—A right of way, created by express grant in a devise, is appurtenant to the land devised, and passes by a conveyance of the land to a purchaser from the devisee, without express mention of the appurtenances; it is also a charge upon the servient lands, which attaches to them in the hands of a purchaser from the person to whom they were devised; and it is not terminated, or impaired, by the fact that the owner afterwards acquires from a third person mere permission, revocable at any time, to pass over other lands so as to reach his own.

2. *Jurisdiction of equity to establish and quiet title to right of way.*—A court of equity has jurisdiction, at the suit of a purchaser from the devisee, to enforce the specific performance, against a purchaser of the servient lands, of an express grant by devise of a right of way appurtenant, by establishing the right, defining the track, and enjoining the disturbance of the way.

3. *Compensation.*—On decreeing the specific performance of the grant of a right of way, establishing the right, defining the track, and enjoining the disturbance of the way, the court will also order an account of the damages sustained by the complainant from the defendant's denial and disturbance of his right.

APPEAL from the Chancery Court of Sumter.

Heard before the HON. WADE KEYES.

THE bill in this case was filed by John L. Hadley, against Hugh S. Lide, for the purpose of establishing the complainant's right of way over and across certain lands owned by the defendant, having the track of the way laid off under the order and direction of the court, quieting the title thereto, and enjoining the defendant from disturbing or interfering with it; and it also contained a prayer for an account of the damages sustained by complainant from the defendant's unlawful disturbance of his right of way, and for general relief. The lands belonging to the complainant, and to which he claimed a right of way, were devised by William Godfrey, in 1854, to his

daughter, Mrs. Olivia Underwood; and were sold and conveyed to the complainant, by Mrs. Underwood and her husband, for valuable consideration, in April, 1855. The defendant's lands, over which the complainant claimed a right of way, and which lay between the public road and the complainant's lands, were devised by said Godfrey to some of his other children; were sold, under an order of the probate court, in 1856, and purchased by one Brown, who, in March, 1856, sold and conveyed them to the defendant. The complainant asserted a right of way over these lands, to his own, under a clause in the will of said Godfrey, which was in the following words: "It is my will, that my sons William and James, and my daughter Olivia, have a wagon road allotted to them, from my present residence to their land, free of charge; and, in the event that they and my other heirs cannot agree where said road shall run, they shall select three disinterested persons to lay off said roads." The bill alleged, that Mrs. Underwood and her husband, after the death of the testator, took possession of the lands devised to her, and used a road across the other lands complying with the general directions of the will, without objection from the other heirs and devisees; that the complainant, after his purchase from Mr. and Mrs. Underwood, continued to use the same road, until some time after the defendant's purchase at the sale under the order of the probate court, when the latter denied his right to the use of said road; that he then referred the defendant to the will of said Godfrey, and requested him to lay out a road as therein directed; that the defendant refused to do this, shut up the road which complainant had been using, and refused him all right of way across said intermediate lands, except in one particular direction, which made the road longer, more inconvenient, and outside of the lands which had belonged to said Godfrey; and that complainant had since been using a temporary way across the lands of Reuben Chapman, by permission of his agent. The defendant answered the bill; admitting its allegations as to the devises and conveyances of the lands owned by the respective parties; but denying that the complainant had

Lide v. Hadley.

a right of way as claimed across the respondent's lands, and that either he or his vendors had used the road as alleged in the bill. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, and ordered the master to state an account of the damage which he had sustained from the disturbance of his right of way, and to appoint commissioners to lay out the road. The chancellor's decree is now assigned as error.

T. REAVIS, for appellant.—1. Mrs. Underwood had no right of way of necessity under the devise to her, because the will directed how the road should be laid out, and thereby excluded the implication of a way of necessity. Pierce v. Selleck, 18 Conn. 321; Symmes v. Drew, 21 Pick. 278; McDonald v. Lindall, 3 Rawle, 492. Consequently, under the deed from Mrs. Underwood to the complainant, no right of way of necessity passed as appurtenant to the land. But, if a right of way of necessity did pass to the complainant, without regard to the way provided by the will, it was his duty to call on the defendant to designate a way for him; and if the latter refused to do so, he had the right to select one for himself; and if he was in the use of the road as alleged, and the defendant stopped up that road, he had the right to cross any other part of the defendant's lands to reach his own. 19 Wendell, 507; 2 Pick. 574; 8 Pick. 339; 3 McCord, 170. The complainant had, therefore, an adequate remedy at law; and, as a judgment in his favor for a disturbance of his way would have been conclusive on the defendant as to his right to that particular way, there was no necessity to go into equity.—11 Harris, 333.

2. No road having been laid out, in the manner directed by the will, at the time of the conveyance by Underwood and wife to the complainant, the way was not then in esse. The granting part of the deed does not convey the right to the way devised by the will. If that right be conveyed at all, it must be by the clause of warranty, which could only operate by way of bargain and sale, or covenant to stand seized, and could not pass the right to

a way not *in esse.*—Beaudely v. Brook, Cro. Jac. 189; 2 Hilliard on Real Property, 324; Saltmarsh v. Smith, 32 Ala. 404.

3. Mrs. Underwood had no right of way, except that given by the will, which was to be laid off by agreement between her and the heirs of Godfrey, or by persons selected by them. Her right to agree, or, in case of disagreement, to select commissioners, was personal to herself, and a privilege which the heirs were interested in having her exercise personally, and which she could not convey to another without the consent of the heirs. But, if she could and did substitute the complainant to all her rights under the will, he certainly acquired no greater rights than she had; and therefore, if he can come into equity at all, he can only do so by alleging the impossibility of agreeing on a way, and of obtaining three disinterested persons to lay it off, as provided by the will.—Watkins v. Tuskaloosa Man. Co., 32 Ala. 518.

4. If a party can come into equity to enjoin the disturbance of a right of way, (for which no precedent has been found,) he must first have established his right at law. or must show by his bill a clear title to a particular way. Burden v. Stein, 27 Ala. 104.

5. If any of the above positions be correct, the bill is without equity. If, however, it be held to contain equity, the proof does not sustain it. The answer denies the allegations of the bill, as to the use of the road by either Mrs. Underwood or the complainant, and there is no proof to sustain these allegations; on the contrary, the complainant's only witness on this point proves his use of an entirely different road.

6. The complainant was not entitled to an account of damages.—2 Story's Equity, §§ 794, 794 *a.*

T. B. WETMORE, *contra.*—1. The complainant's bill shows a right of way of necessity, as well as by express grant under the will of Godfrey.—2 Hilliard on Real Property, §§ 49, 62; 1 Barbour's Ch. 354; 15 Conn. 39; 19 Wendell, 507; 24 Barbour, 44; 20 English Law and Eq. 561. This right was appurtenant to the land, and

passed to the complainant, under his deed from Mrs. Underwood, without express grant; and it was a charge on the servient lands after the defendant had acquired them. 10 B. Monroe, 463; 11 Harris, 333; 7 Foster, (N. H.) 453; 2 Hilliard R. P. §§ 60, 85, 87; and authorities above cited. This right could only terminate by the complainant's acquisition of other lands, over which he might pass, and was not affected by his permission to pass over the lands of Chapman.

2. The complainant had a clear right to come into equity, to enforce the specific performance of the grant, to have the way established and laid out, his title thereto quieted, and the defendant restrained from further disturbance of it.—1 Spence's Equity, 646; Story's Equity, §§ 783–4, 788; 6 Serg. & R. 75; 10 B. Monroe, 463; 10 Maryland, 89; Woolwych on Ways, 52.

3. The right to compensation, or an account of damages, is an incident to the other relief.—30 Ala. 307.

R. W. WALKER, J.—The will of William Godfrey contained an express grant to Mrs. Underwood of a right of way from the public road to the land devised to her, over the intermediate land of the testator. This right was appurtenant to the land devised, and not a right in gross; and passed by a conveyance of the land to the alience, without express mention of the appurtenances.—Coke's Litt. 121 (b.); Smiles v. Hastings, 24 Barb. 44, 48; Underwood v. Carney, 1 Cushing, 285, 290; Trustees v. Cowen, 4 Paige, 510, 514; Pitkin v. L. I. R. R. Co., 2 Barb. Ch. R. 231; Williams on Real Prop. 269; 2 Hilliard on Real Property, (3d ed.) p. 16, §§ 60, 62–3, &c. In like manner, it was a charge upon the intermediate land; and when the defendant purchased that land, he took it subject to the easement.—Wissler v. Hersey, 23 Penn. St. R. 333; Hills v. Miller, 3 Paige, 254; Wolfe v. Frost, 4 Sandf. Ch. 72.

A right of way *of necessity* ceases with the necessity which gave rise to it; so that, if a public road is opened, or the grantee purchases other land, which gives him a way over his own land, the first right of way ceases.

Collins v. Prentice, 15 Conn. 39; Pierce v. Selleck, 18 Conn. 321; N. Y. Life Ins. Co. v. Milnor, 1 Barb. Ch. R. 353; Holmes v. Goring, 2 Bing. 76. But the case is otherwise, where the owner of land has a right of way to the same, over the premises of another, by prescription, or by *express grant.*—N. Y. Life Ins. Co. v. Milnor, 1 Barb. Ch. 362. Even if it be conceded, that the right which the complainant obtained by his purchase from Mrs. Underwood, would terminate whenever he acquired another way to the land devised; it certainly is not impaired by the fact, that he has a mere permission, revocable at any time, to pass over Chapman's land, so as to reach his own. A privilege which is held by mere favor, and which may be withdrawn at any moment, can in no sense be deemed a right; and we apprehend that it is the acquisition of a legal right to another way, which terminates a prior way of necessity.

[2.] The difficulty in the case is not as to the existence of the complainant's right, but as to whether there is any ground of equitable jurisdiction. The testator, in granting the right, prescribed the general direction of the way, but did not designate its specific track. He left this to be done by agreement between the devisee of the right and his other heirs, and provided that, in the event they could not agree upon the location of the way, they should select three disinterested persons to lay off the road. The devisee and the heirs parted with the dominant and servient estates, without having located the way, or selected commissioners for that purpose; and the right and duty of making the location, or, in case of disagreement, of selecting third persons to do so, have devolved upon their respective alienees. At all events, the devisee of the right, and the heirs who were the owners of the land subject to it, have, by conveying to others their interest in the property, divested themselves of all authority in reference to the location of the way. The right to have a way allotted to him certainly passed to the complainant; and if he obtained the right, unattended by the privilege which the will conferred on Mrs. Underwood, to participate in the specific location of the road, or to have a voice in the se-

lection of commissioners for that purpose, this, of itself, would seem to justify the interposition of chancery; otherwise, there would be a clear right to have a way, but no means of designating and laying off its specific track.

Nor is the result different, if we assume, as we think may properly be done, that the complainant and the defendant have, by their purchases, been substituted to all the rights which the will conferred on the heirs and devisee, in reference to the location of the road. True, it is not shown that the complainant called upon Lide to join him in designating the track of the way, or in selecting commissioners for that purpose. But it is alleged and proved, that the defendant denied entirely the existence of any right in the complainant to have a way over the lands in question; and it is shown by the defendant's answer, as well as by his previous acts, that a demand for the location of the road, either by the parties themselves, or by third persons to be chosen by them, would have been useless. It was not necessary, therefore, to allege or prove such demand; and the rights of the parties, in a court of chancery, are just what they would have been if the making and refusal of such demand had been alleged and proved.—Elliott v. Boaz, 9 Ala. 779. This being so, the case presented is briefly this: The complainant has, by express grant, a right to have a way over the lands of the defendant. By the terms of the grant, the specific location of the way is to be determined by the joint action of both parties, either by laying off the road themselves, or by selecting three disinterested third persons to do so. The defendant, however, denies the right of the complainant, and repudiates all obligation on his part to act in the premises. By his refusal to perform the duty cast upon him by his purchase of the servient estate, the means which, by the terms of the grant, were provided for the location of the way, have failed. The right of the complainant, however, is not thereby destroyed. That is still perfect, although the defendant's refusal to perform his duty may have deprived the complainant of the means of specifically defining the way to which he is entitled. Under these circumstances, it seems clear that the complain-

41

ant may come into a court of equity, to enforce specific performance of the grant.—See 2 Story's Eq. § 788.

It may be said, that on the refusal of Lide to join in locating the way, or in selecting commissioners, the complainant was himself authorized to lay off the road, corresponding with the general directions of the will; and that, having the power to establish the track of the road by his own act, he cannot call upon a court of equity to establish it for him, or to afford him any relief in relation to it, unless he has first, by the exercise of his privilege of location, obtained a right to a particular way. Without stopping to consider whether the complainant had any such right to locate the way as is here supposed; or, if he had, whether he was bound to assert it by an actual location, as a condition essential to his claim to equitable relief, a satisfactory reply to this position is found in the fact, that if the complainant had such right, it is sufficiently shown that he exercised it. After Hadley bought, he at first used a way, not corresponding with the old road used by Godfrey in his life-time. On the suggestion of the defendant, the road traveled by the complainant was changed, in 1855 or 1856, so as to correspond with the old road used by Godfrey. The road as thus changed is that which is laid down in the map which forms an exhibit to the original bill. This road the complainant continued to use, until it was obstructed by the defendant; and although his right to use it was always denied by the defendant, it is plain that the complainant asserted his claim to use it as secured by Godfrey's will. If, then, the complainant was authorized to locate the way, he did, in effect, do so, by adopting and claiming the right to use the particular road last spoken of. The allegation that Mrs. Underwood used this particular road before her sale to the complainant, is not proved; nor was it necessary that it should be, as the complainant's title to relief is made out without establishing that fact. This is not a case of variance, but a failure to prove an unnecessary allegation. On the supposition, then, that the complainant had the right to locate the way, and has exercised it, the bill might

be maintained, as a bill to quiet his title to the use of that particular way, and to enjoin the disturbance of it.

A court of law might, it is true, give damages for a disturbance of the way. But that would not afford adequate relief for such an injury. Hence, it is settled that, where easements or servitudes are annexed, by grant or otherwise, to private estates, the due enjoyment of them will be protected against encroachments by injunction, although an action for damages would lie at law.—Hills v. Miller, 3 Paige, 254; Trustees v. Cowen, 4 Paige, 510, 514; Seymour v. McDonald, 4 Sandf. Ch. 502; 2 Story's Eq. §§ 925–6–7; Burden v. Stein, 27 Ala. 104. A recovery at law might be, in some measure, indemnity for the past, but would hardly be security for the future. The way might, and probably would, be again obstructed, and the farm rendered comparatively valueless by the inability of the owner to cultivate it. To deny to the owner of land, suited for agricultural purposes, all access to it, is to take so much from the general wealth of the community; and is, therefore, an indirect injury to the public, as well as a direct wrong to the individual proprietor. In Dalton v. Taylor, (2 Lutw, R. 1487,) one of the grounds on which the existence of a way *of necessity* is placed, is, that it is not for the public good that the close should be left uncultivated. The fact that the remedy at law is embarrassed, or doubtful, or difficult, or less full and complete than the remedy in equity, is enough to justify resort to a court of chancery.—Am. Ins. Co. v. Fisk, 1 Paige, 90; Boyce v. Grundy, 3 Peters, 210; Barnes v. Lloyd, 1 How. Miss. 584; Pearl v. Nashville, 10 Yerger, 179.

In any aspect of it, the case is one for equitable cognizance. But we are best satisfied to rest the jurisdiction of the court on its power to enforce specific performance of the grant, by establishing the right, and defining the track of the way, and its authority to enjoin the disturbance of the way when thus laid off.

[3.] The account of the damages which the complainant had sustained, was properly decreed, as an incident to the other relief granted.—30 Ala. 307. And it makes no difference as to this claim, whether the specific way to

which the complainant was entitled had or had not been designated. He had the right to have *some* way over the land of the defendant. Of this right he was deprived by the latter; and if the deprivation of his right has wrought an injury to the complainant, he is entitled to compensation.

Decree affirmed.