## STOVALL *v.* COGGINS GRANITE COMPANY *et al.*

A written conveyance, under seal, from the owner of land to S. & E., conveying a strip of land to the latter for the purpose of building a spur-track from the main stem of a railroad to a stone quarry, the stone and the right to mine it having been previously purchased from another by S. & E., and reserving the right to re-enter when S. & E. "get through using said road in working quarry," conveyed an easement which is appurtenant to the dominant estate of S. & E. and which passed to their successors in title in the quarry although the conveyance of the strip contained no words of assignability.

Argued October 6, — Decided October 29, 1902.

Complaint for land. Before Judge Holden. Elbert superior court. May 27, 1902.

*I. C. Vanduzer* and *W. D. Tutt & Son*, for plaintiff, cited 6 Am. & Eng. Enc. L. (1st ed.) 139, 140, 142; 10 Id. (2d ed.) 411; Civil Code, § 3070; 55 N. H. 423; 34 Vt. 451; 15 Mass. 130; 21 Pick. 278; 30 Me. 94; 15 N. Y. 601; 10 O. St. 523, s. c. 78 Am. Dec. 280; 27 N. J. Eq. 526.

*J. N. Worley* and *P. P. Proffitt*, for defendants, cited Goddard, Easements (Benedict's ed.), 11, 98, 99, 263; 10 Am. & Eng. Enc. L. (2d ed.) 403, 405, 419; 69 *Ga.* 458.

SIMMONS, C. J. On April 27, 1894, Swift & Etheridge, a partnership, purchased from Almand "all the rock on" a certain tract

of land, with the right to erect all buildings that might be "needed to carry on the business of mining or quarrying of stone on said land," and a strip of land 50 feet wide, extending from the quarry toward a named railroad as far as the line of the land of Stovall. On May 5, 1894, Stovall executed an instrument under seal, which, after acknowledging receipt of $100 from Swift & Etheridge, conveyed to them a strip of his land about 100 wide and 350 feet long, "for the purpose of building and grading and using as a side-track" from the railroad to the line between the land of Stovall and the fifty-foot strip granted by Almand.   In this instrument it was provided that "Stovall shall have the exclusive right to cultivate as much of said land as does not interfere with its use for railroad purposes.   This property is conveyed to said Swift and Etheridge to be used by them for railroad purposes only.   When said Swift and Etheridge get through using said road in working quarry, the land to revert to said Jas. T. Stovall.   If the work is not commenced in two years, then the said described property to revert to" Stovall.   In June, 1895, Almand by deed conveyed to Thomas M. Swift and John W. Etheridge (the two partners) the entire lot of land on which the quarry was located.   In 1896 the firm of Swift & Etheridge was dissolved.   In January, 1898, Swift conveyed to Long his half interest in the land on which the quarry was located, together with his interest in the "tools, derricks, and fixtures now used or which have been used in the quarrying business" heretofore mentioned.   In 1901 Stovall brought suit against certain persons, including Long and a partnership of which Long and Etheridge were members, for the recovery of the strip of land on which the right of way was located.   In their answer the defendants denied any interference with the fee in the land, but claimed that the right of way over it from the quarry to the railroad-track was an easement appurtenant to the quarry and was the right and property of the defendants.   On the trial there was no conflict in the evidence as to any material fact.   The conveyances above mentioned were introduced, and the evidence showed that the firm of Swift & Etheridge had been dissolved in 1896.   It also appeared that the spur-track had been constructed from the quarry to the main stem of the railroad, and that the land here involved was rough and uneven and, independently of this spur-track and of its use in connection with the quarry, worth not more than ten dol-

lars. The defendants are now operating the quarry and using the right of way in connection with the business. The judge directed a verdict for the defendants. The plaintiff moved for a new trial, and the judge overruled the motion. To this ruling exception is taken. The principal question made in the motion for new trial, and the only one argued here, was whether the judge erred in directing a verdict for the defendants.

The right of way granted by the plaintiff was to Swift & Etheridge, and the conveyance is by both sides treated as a conveyance to a partnership. This firm was subsequently dissolved, and the new firm, which is one of the defendants, is a distinct entity although it includes among its members Etheridge and the assignee of Swift's interest in the quarry. If the instrument executed by Stovall created but a right of way in gross, such right could be exercised only by the old firm, as such, operating and working the quarry, and determined when the partnership was dissolved. If, on the other hand, the right was an easement appurtenant to the quarry, it ran with the quarry and may be exercised by the grantees' successors in title so long as they are operating and working the quarry. If the easement was appurtenant, it passed with the dominant estate, although the conveyance thereof may not have expressly mentioned the easement or contained a general conveyance of the appurtenances of the estate. United States v. Appleton, 1 Sumn. 492 ; Taylor v. Dyches, 69 Ga. 455 ; Lide v. Hadley, 36 Ala. 627 ; Barnes v. Lloyd, 112 Mass. 224 ; Hollenbeck v. McDonald, Ibid. 247 ; Washb. Eas. (4th ed.) *26 ; 10 Am. & Eng. Enc. Law (2d ed.), 418. The decision of this case must, therefore, depend upon the question whether the right granted by Stovall was a right of way in gross or an easement appurtenant. An easement has been defined to be "a privilege without profit which the owner of one neighboring tenement has of another, existing in respect of their several tenements, by which the servient owner is obliged to suffer or not to do something on his own land for the advantage of the dominant owner." 10 Am. & Eng. Enc. Law (2d ed.), 398. An easement in gross, as the term is now commonly used, is a mere personal right in the land of another, while an easement appurtenant is an incorporeal right which is attached to and belongs to some greater or superior right. Ibid. 403. In determining whether a right granted is appurtenant or in gross, courts must consider the terms of the grant, the nature

of the right, and the surrounding circumstances, giving effect as far as possible to the legally ascertained intention of the parties but favoring always the construction of the grant as of an easement appurtenant rather than of a right in gross.   Ibid. 405; Washb. Eas. * 29.   The present case is not free from difficulty, and before deciding it we have examined many decisions.   Among these is the case of Merriman v. Russell, 2 Jones' Eq. 470, in which one party had by deed "bargained and sold as much of my land  .   .   as will conveniently convey the water to a sawmill, so as to be to his [grantee's] profit and advantage."   The court, after considering the terms of the instrument in the light of the facts existing at the time of its execution, came to the conclusion that, as the professed purpose was to convey water to a mill, and as few would be at the expense of erecting a mill if the water supply depended upon the uncertainty of life, the intention was to make the easement appurtenant to the mill, and that the heirs and assigns of the grantee were entitled to enjoy the easement as long as they continued to operate the mill.   This case was approved and followed in Hall v. Turner, 110 N. C. 292.   In the latter case Hall and Turner entered into a written agreement, under seal, "that the said Hall agrees and consents for the said Turner to back water, if necessary, up into his field [on certain conditions].   This agreement to remain good so long as Turner keeps up a mill at the Wagoner place ; afterwards to be null and void."   Following the reasoning in the Merriman case, and calling attention to the absence of language plainly restricting the grant to the life of the grantee, the court concluded that it was not the intention of the parties that Turner should have a mere personal right, but that the easement should descend with the land to the heirs of Turner, who would hold in it a .base or qualified fee, as had their ancestor.

In Lide v. Hadley, 36 Ala. 627, 76 Am. Dec. 338, certain land was devised to a daughter of the testator, and the will contained a provision that the devisee (naming her) should have a wagon-road to this land, allotted to her free of charge, over other lands lying between it and the public road and devised to other children.   The court held that this right of way was an easement appurtenant to the land devised to the daughter, and not a right in gross, and passed by a conveyance of the land to the alienee without express mention of the appurtenances.   In Karmuller v. Krotz, 18 Ia. 352, two ten-

ants in common partitioned their land by a written contract signed by both parties. . This contract contained the following stipulations :   " John has the privilege of a road and landing upon the bank of the Mississippi River, at or near the mouth of Cattese Creek."   " It is further distinctly understood that the said John Krotz shall have the privilege of a road through the land of the said Bernhart, so as to enable him to take the nearest and best road to Dubuque."   John subsequently conveyed these lands to the plaintiff, making no mention of these rights of way.   The court carefully considered the terms of the contract and studied them in the light of the circumstances which surrounded the parties at the time of its execution.  Attention was called to the fact that in Iowa (as in Georgia) there is a statute which provides that the term " heirs " or other technical words of inheritance are not necessary to create and convey an estate in fee simple, the deduction being that the words " heirs " or " assigns " would not be absolutely essential in order to make a right of way appurtenant to the land.   It was held that the use of the word " privilege," and the provision that the right was " to enable *him* to take the nearest and best road," did not show an intention to make the right personal merely ; but that under a proper construction the contract created an easement appurtenant to the land.   The court then said, speaking through Dillon, J.:  " If . . the road was not a personal privilege but one *annexed to the land,* then it is appurtenant and will pass to the heir or by a devise or conveyance of the land, although not particularly specified in the will or deed.  The use of the word appurtenances is not necessary, for, being an incident, it passes with the grant of the principal thing."

In the light of these authorities, we think the right of way granted by Stovall was not personal but was appurtenant to the quarry.   A right of way in gross is personal to the grantee, and is not appurtenant to any other premises; while in the case of an easement appurtenant there is always a dominant tenement.   It was argued here that the estate of Swift & Etheridge in the quarry was itself an incorporeal right, and that an easement can not be appurtenant to incorporeal property.   Even conceding that an easement appurtenant must be imposed for the benefit of corporeal property, the doctrine can have no application in the present case; for Swift & Etheridge had, not merely a mining or quarry right in

the land at the time of the purchase of the right of way, but a deed to the rocks or stone on such land together with the right to quarry and remove it. Their property was, therefore, corporeal and such as might be a dominant tenement if the easement were granted for its benefit. . "Private ways are never presumed to be personal when they can be construed to be appurtenant to the land." *Taylor* v. *Dyches*, 69 *Ga.* 455. If the right granted is in its nature an appropriate and useful adjunct of the estate of the grantee and there is nothing to show an intention to create a mere personal right, the easement should be held to be appurtenant. 10 Am. & Eng. Enc. Law (2d ed.), 405. The grantees here owned a quarry. This quarry was near a railroad-track, but separated from it by the land of Stovall. That the stone quarried might be easily and readily removed to the railroad, a right of way over Stovall's land was necessary. The land over which the right of way was granted by Stovall was rough and uneven, and of practically no value independently of its connection with the quarry. The grantees paid for the right of way a sum far in excess of the real value of the land for any other purposes, constructed over it a spur-track to the railroad, and operated the stone quarry. Is it reasonable to suppose that this would have been done if it was understood that the right of way was to exist only during the life of the partnership as such and while the firm operated the quarry? Is it not much more reasonable to suppose, in view of all the then-existing facts, that the parties intended that the right of way should continue during the life of the enterprise,—for all the time the quarry was worked, whether by Swift & Etheridge or by their successors in title? And even without regard to the extrinsic facts, does not the instrument itself show that the right of way was granted for the benefit of the quarry, and not for the benefit of the grantees except in connection with the quarry? To us it appears that the intention was to create an easement for the benefit of the quarry, and not of the grantees personally; that this easement was an appropriate and useful, if not a necessary, adjunct of the quarry; that it was useful to the grantees for no other purpose and could be used by them for this purpose only; that the words, "when Swift and Etheridge get through using said road in working quarry," were intended to mean, "when the operation of the quarry is at an end"; that there is nothing in the instrument which plainly re-

stricts the right of way to the duration of the partnership and the operation of the quarry by the partnership. We therefore hold that the right of way was an easement appurtenant, annexed to the quarry so as to pass with it to the successors in title of Swift & Etheridge. This easement is, of course, qualified and may be determined by the abandonment of the quarry or by the cessation from any cause to work the quarry. While the quarry is worked by the successors of Swift & Etheridge, they are entitled to use the right of way granted by Stovall. The judge did not err in directing a verdict against the plaintiff.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*