## SOLOMON K. LALAKEA *v.* HAWAIIAN IRRIGATION COMPANY, LIMITED.

### No. 2528.

ARGUED MARCH 15, 1944.                    DECIDED APRIL 1, 1944.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY PETERS, J.

This is an action of ejectment. The land involved is a twenty-foot strip 334.5 feet long included in the prem-

ises situated at Kukuihaele, Hawaii County, described in Royal Patent 6513, Land Commission Award 7957, apana 3 (hereinafter referred to as the "kuleana"), comprising an area inclusive of the strip in controversy of 4.87 acres. At the time that the action was filed this strip was occupied by a segment or part of an open, visible, permanent and continuous artificial irrigation ditch theretofore constructed and since maintained thereon by the defendant and used by it as a part of what is known as the "Hamakua Lower Ditch" for the conveyance of water to, over, along and beyond said strip. Plaintiff claimed that he owned the strip in controversy in fee and that the defendant's occupancy and use was without right since April 11, 1940. The defendant claimed title by prescription to an easement to convey water over and along the strip in question by its existing ditches and flumes as a part of the Hamakua lower ditch.

The trial court, jury waived, concluded that the plaintiff's fee in the strip in controversy was subject to the easement claimed by the defendant and gave judgment accordingly.

But two exceptions are alleged: one to the decision of the court; the other to the judgment. Both contain the same grounds and the exception to the decision alone need be considered. There is no claim that the judgment does not conform to the decision.

The grounds of the exception to the decision challenge the finding of the trial court that the defendant's occupancy was hostile. Plaintiff practically conceded below that the defendant's occupancy for the prescriptive period was actual, open, notorious, continuous, exclusive, peaceable and apparently as owner. It was upon the issue of hostility that the controversy centered, the plaintiff contending that the defendant's occupancy was permissive,

for the reasons: (a) that during the alleged prescriptive period the defendant held and used adjoining land as plaintiff's sublessee; (b) that the easement claimed by the defendant was appurtenant to such adjoining land under lease to defendant's sublessor and was included thereunder by implication; and (c) that even if the defendant had acquired an easement, such easement terminated upon the expiration of the lease of the adjoining land—in short, that defendant's occupancy was not hostile.

A statement of the facts will serve to develop the grounds of the exception and dispose of the included objection that the decision is contrary to the law and the evidence and the weight of the evidence.

The plaintiff is an adult son of T. K. Lalakea, deceased intestate, late of Hilo, Hawaii, who died on May 15, 1915. He was born in 1888 and, like his father before him, is a dealer in real estate on his own account.

The defendant during all the times hereinafter mentioned was a domestic corporation. Originally its name was Hamakua Ditch Company, Limited. Its organic documents are not before us and we cannot say for what purposes it was organized further than may be inferred from the exercise by it of presumably lawful corporate functions. Nor does it appear that on April 24, 1911, the effective date of Act 124 of the Session Laws of 1911, it was qualified to exercise the powers of eminent domain therein granted.

In 1906 the defendant promoted the construction of a gravity irrigation ditch in the district of Hamakua, Hawaii County, from Waipio to Paauilo, a distance of approximately 12 miles, for the conveyance and distribution for purposes of irrigation of water developed in the Kohala mountains and Waipio gulch. The line of the proposed ditch crossed, among other lands, those of the Pacific Sugar Mill, the kuleana described in Royal Patent 6513,

apana 3, and adjoining premises to the east described in Grant 933 (hereinafter referred to as the "grant"). In anticipation of the construction of said ditch and on, to wit, January 24, 1906, it entered into a contract with the Pacific Sugar Mill whereby the defendant agreed before January 1 of the following year to commence the work of construction of the ditch and to make, construct, operate, maintain and repair the same, and to sell and deliver to the mill company certain quantities of water therefrom daily for the period of thirty years (later increased to fifty years) from the date of the first delivery of water to the mill company, in consideration whereof, in addition to the price to be paid for said water, the mill company granted to the defendant easements or rights in the nature of easements over all lands owned or controlled by it between definite elevations.

Plaintiff contends that under the provisions of this contract, upon the execution of the subsequent leases of 1912, hereinafter more particularly referred to, there was created the relation of sublessor and sublessee between the mill company and the defendant. This contention and the general exception to the decision necessitate reference to the specific provisions of the contract relating to the easements or rights in the nature of easements conferred.

In order to understand the context, we might say that the Hamakua Ditch Company is the first party to the contract, the Pacific Sugar Mill the second.

The first paragraph of the contract contains the undertaking by the party of the first part to supply the party of the second part with certain quantities of fresh water daily "within twenty months after the commencement of the work on the construction of the Hamakua Lower Ditch" and certain additional quantities of fresh water daily thereafter until the expiration of a term (as yet

unexpired) "from the date of the first delivery of such fresh water." The second paragraph provides that the ditch company deliver the said water to the mill company in an even and regular flow at the Hamakua lower ditch, "which ditch the said party of the first part hereby agrees to construct across or over the land situate in the District of Hamakua, Island of Hawaii, lying between one thousand (1000) feet and eleven hundred (1100) feet elevation above sea level and also between the Waipio Gulch and the Paauhau Gulch."

Paragraphs 3, 4 and 5 refer to deficiencies of water and the additional quantities to be available in the event of surplus waters.

Paragraph 6 provides: "That it, the said party of the first part, will, before the first day of January 1907, commence the work of constructing the said ditch, the right of way for which across or over its lands the said party of the second part hereby covenants to grant to the said party of the first part, and will thereafter prosecute the said work with due diligence to completion."

The 7th paragraph provides: "That it, the said party of the first part, will make, construct, operate, maintain and repair the said ditch, the right of way for which across or over its lands the said party of the second part hereby covenants to grant to said party of the first part, so that none of the property of the said party of the second part shall be imperilled," etc.

Paragraph 8 provides for the construction by the party of the first part of fences, etc., along the line of the ditch.

Paragraphs 9 and 10 refer to the measuring of the water delivered.

Paragraphs 11 and 12 are immaterial to our consideration.

The contract further proceeding provides: "And This Indenture Also Witnesseth: That, in consideration of the

premises, the said party of the second part doth hereby covenant with the said party of the first part as follows:

"(1) That it, the said party of the second part, will purchase from the said party of the first part the said water at the price and upon the terms and conditions herein contained:

"(2) That it, the said party of the second part, will grant to the said party of the first part, in consideration of One Dollar ($1.00):

"(a) a right of way not to exceed twenty (20) feet in width (except where the contour of the land makes an additional width necessary for the construction of the ditch) for a ditch across or over the lands owned by the said party of the second part and those under its control in Hamakua aforesaid at any elevation above sea level between one thousand feet and eleven hundred feet that the said party of the first part shall select, to hold the same right from the date of the commencement of the work of constructing the said ditch until the expiration of fifty years from the date of the first delivery of water to the said party of the second part as hereinbefore mentioned." The remainder of the contract pertains to rights of access over and along the roads of the mill company. It concludes with the provision that the contract "shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns."

The construction of the ditch was commenced by the defendant in 1907; the section of the proposed ditch intersecting the kuleana and adjoining grant was completed in 1908. The ditch, as a whole, was finally completed July 17, 1910, when the first delivery of water was made to the Pacific Sugar Mill. The southerly and easterly boundaries of the kuleana abut two northerly and westerly boundaries of the grant and are coextensive therewith. The line of ditch traverses the southerly end of the kule-

ana, and the northerly end of the grant in an east-west direction, and the declination of the ditch is from west to east. The grant contains 102.33 acres. Practically all of the area of the grant lies to the south of the ditch while most of the land of the kuleana lies to the north. The slopes of the kuleana and grant are toward the north. The segment of the ditch crossing the grant is 95 feet long.

In 1907, T. K. Lalakea and one Kaaha, the predecessors in interest of plaintiff, were joint owners in fee of both the kuleana and the adjoining grant. Under what claim of right the defendant entered upon either the kuleana or the adjoining grant does not appear. No claim was made that it entered under color of title except as a grant might be presumed from long-continued adverse occupancy consistent with a claim of ownership. Nor does it appear that subsequent to April 24, 1911, the effective date of Act 124, Session Laws 1911, it took any steps to acquire the same under the powers of eminent domain granted to corporations organized for the development, conveyance or transmission of water for irrigation purposes and possessing the other qualifications required by the provisions of section 1 of the Act, until September, 1939, when it instituted proceedings, subsequently discontinued, to condemn the strip occupied by its ditch included in the grant. Plaintiff contends that the defendant entered as a trespasser and was a continuing trespasser until it became a sublessee of the Pacific Sugar Mill by reason of the contract of 1906 and the leases to the Pacific Sugar Mill by the owners of the grant in 1912. The defendant, on the other hand, contends that it entered under claim of right and invokes the presumption of a lost grant, arising from long-continued adverse occupancy and use. Remarkable to relate, the president of the defendant company, as a witness on behalf of the defendant, disclaimed knowledge of the whereabouts of all its records pertain-

ing to the construction of the Hamakua lower ditch prior to 1915. None of the officers, employees or engineers of the defendant company now living, who had to do with the survey for the ditch or its construction, was called as a witness. So that the record is absolutely silent upon the situation as it existed from 1906 to 1915.

On November 22, 1912, T. K. Lalakea, then the owner of an undivided 5/9ths interest in both the kuleana and the grant, executed a lease to the Pacific Sugar Mill of 56.6 acres of the grant, and although therein described by metes and bounds, the premises demised are referred to as "an undivided interest of 102 acres." The term was for ten years from January 1, 1912, with the right after the expiration of the term to waygoing crops, including first ratoons. On December 18 following, T. K. Lalakea's cotenant, one Kealaiki Kaaha, the then owner of an undivided 4/9ths interest in both the kuleana and the grant, executed a lease to the Pacific Sugar Mill of 45.4 acres of the grant, similarly describing the premises demised by metes and bounds and referring to them as "being an undivided interest of 102 acres." The term demised by Kaaha was for ten years from January 1, 1913, and her lease was otherwise in the same form as the lease from T. K. Lalakea. Both leases included, in addition to the premises demised, "all rights, easements, privileges and appurtenances to the same belonging or appertaining." Neither lease contained a covenant against the lessee assigning or subleasing the premises demised. The leases were extended by mutual consent of the parties to December 31, 1935: first, with the Pacific Sugar Mill, and after 1928, with the Honokaa Sugar Company, Limited, which in 1928 succeeded to all the assets and property of the Pacific Sugar Mill, the latter company at that time having dissolved.

In November, 1939, plaintiff executed a new lease of Grant 933 to the Honokaa Sugar Company. The incidents of its occupancy of the grant from December 31, 1935, to the date of the lease, further than it was a tenant of plaintiff, are immaterial. The record does not disclose the terms of the new lease.

Disputes arose thereafter between plaintiff and defendant as to their respective rights in the twenty-foot strip over the kuleana, resulting in a letter to plaintiff from defendant by its attorney dated April 11, 1940, that it claimed an easement by prescription over the kuleana to the extent of its existing ditches and flumes thereon and the use made thereof. This was the first time that the defendant gave plaintiff or its predecessors in interest any other or additional notice of adverse tenure than was implicit in the occupancy of the kuleana by its existing ditches and flumes, their maintenance and the conveyance of water thereby.

Upon the use made by the defendant of the strip in controversy during the alleged prescriptive period, the trial court said:

"The defendant operates a valuable gravity ditch system which collects water from the Kohala mountains and distributes it commercially to three sugar plantations along the Hamakua coast. The defendant operates a so called 'upper' and 'lower' ditch system. This case concerns only a segment—located in the middle—of the lower ditch system. The water flowing through this ditch is used principally in connection with the sugar industry for irrigation, vapor and other mill uses, though some water is used domestically and some is given to the town of Honokaa. * * *

"Though referred to as a ditch, actually this irrigation system consists in part—due to the topography of the land—of wooden flumes. In general, the conduit is

seven feet wide and its sidewalls are from 32 to 48 inches high.

"Upon Apana 3 the water is conveyed 334.5 feet across it from the Waipio [westerly] side first by a wooden flume, then by a concrete ditch cut into the ground, and then, by another wooden flume the water leaves Apana 3, flowing off by a conduit towards Honokaa [to the east] across Apana 1 of Grant 933.

"The two flumes on Apana 3 are made of redwood, the supports of which are from 60 to 70 feet in height and which in turn rest on concrete posts.

"The concrete ditch on Apana 3 is cut into the earth, lined with stone and pointed with cement.

"Along the ditch right of way is a trail traversed almost daily by the defendant's employees who are charged with keeping the ditch clean and in good repair.

"The water has never stopped flowing across Apana 3 since the lower ditch system was put into operation in 1910—save and except for the purposes of repair. In 1941 the flume on the Waipio side of Apana 3 was completely renewed; the old concrete supports being again used.

" * * * that the portions of the irrigation system located on Apana 3 was put to use in 1910. This strip of land is said to be about 200 feet mauka of the main government highway and, though not visible therefrom, to be accessible as well as visible from nearby private plantation roads. * * * that defendant has used the strip across Apana 3, for the purposes of maintaining and using this portion of its ditch system, continuously, openly and uninterruptedly since 1910. At least since 1915 and probably since 1910 no one seems to have lived on Apana 3. * * * this ditch right of way across Apana 3, Grant 7957 —as to which the defendant claims an easement by prescription—is not and never has been enclosed in any way

\* \* \* ." This is a fair statement of the substance of the evidence in that regard.

The trial court upon the evidence found the following facts:

"1. The plaintiff owns Apana 3 of Grant 7957 and it has been owned by plaintiff and his predecessors in title since 1851.

"2. The defendant has since 1907-1908, and now is in actual and exclusive possession of a strip of land across Apana 3 twenty feet wide which it has since 1910 and now uses as a ditch right of way. It is not made to appear how defendant originally went into possession of this land or with what intention.

"3. The defendant's exclusive possession and use of this land for a ditch right of way has been since 1907-1908 to the date of the suit, open, notorious, uninterrupted, continuous, apparently as owner though without color of title and peaceable—save and except that since July 1937 plaintiff has been demanding, without success, rent from defendant for the use of this strip since July 1936.

"4. The defendant has never enclosed the right of way; has never posted any signs on the premises, nor ejected plaintiff when on numerous occasions he went upon this land. If any taxes with regard to this strip have been paid, plaintiff and his predecessors paid them. In 1940 defendant gave plaintiff, by a letter, its first verbal notice that it claimed an easement over Apana 3 for a ditch right of way.

"5. As to Apana 1, Grant 933, which adjoins Apana 3, Grant 7957, below:

"(a) The defendant's ditch also crosses this Apana. The ditch right of way across this Apana 1 has also been in use and in defendant's actual and exclusive possession since 1910. .

"(b) Though plaintiff claims defendant crossed Apa-

na 1, Grant 933, by virtue of the 1906 contract which it had with Pacific Sugar Mill whereby it acquired the right to select any land owned or controlled by Pacific Sugar Mill for a ditch right of way and to use same for fifty years from date the water first flowed or as long as Pacific Sugar Mill controlled the land, it is found that Pacific Sugar Mill did not until January 1913 have complete legal control of Apana 1, Grant 933, by which date the lower ditch had been in operation over two years. At best it appears that defendant may have had actual control of approximately an undivided half of Apana 1 since January 1912;

"(c) By December 1912, effective as to an undivided 56.6 acres as of January 1912, and effective as to the balance as of January 1913, Apana 1, Grant 933, was under lease to Pacific Sugar Mill and later Honokaa Sugar Company until July 1936. It was again leased in 1939 and then directly to Honokaa Sugar Company. During the interim period of approximately three years defendant started (1937) condemnation proceedings to condemn a ditch right of way across this Apana 1, Grant 933."

The rule is well established that where the owner of land subjects part of the land to an open, visible, permanent and continuous service or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or benefit as the case may be.[1] Nor does the inclusion of the word "appurtenances" in the habendum add to the rule. Grant of the service or easement is implied unless expressly reserved.[2] The same is

---

[1] *Central Railroad Co.* v. *Valentine*, 29 N. J. L. 561; *VanPatten* v. *Loof*, 349 Ill. 483, 182 N. E. 628, 630; *Bihss* v. *Sabolis*, 322 Ill. 350, 153 N. E. 684; *Gardner* v. *Maffit*, 335 Mo. 959, 74 S. W. (2d) 604; *Simonson* v. *Goldberg*, 338 Ill. 420, 170 N. E. 252; 19 C. J. Easements § 103, p. 914.

[2] *Sweetland* v. *Olsen*, 11 Mont. 27, 27 Pac. 339, 340; 19 C. J. Easements § 141, p. 937.

true where the owner of the fee leases either portion for a term of years. The lessee takes the demise subject to the burden or benefit as the case may be.[3] The conveyance of water over the tract comprising the kuleana and the grant, by the existing ditches and flumes thereon, was unquestionably open, visible, permanent and continuous. Hence it is that if the right to convey water by the existing ditches and flumes over and along the tract consisting of both the kuleana and grant constituted a service or easement in favor of the kuleana or the grant, the lessee, the Pacific Sugar Mill, by the 1912 leases took the premises demised subject to the burden or benefit, as the case may be, to which the same had been subjected.

One of the essential qualities of an easement which is appurtenant to land is that there must be two distinct tenements: the dominant, to which the right belongs, and the servient, upon which the obligation is imposed.[4] To apply this qualification of an appurtenant easement accordingly as the grant was benefited or burdened, either the grant or the kuleana could be the dominant tenement and the other the servient. Plaintiff claims that the grant is the dominant tenement and the kuleana the servient and that upon the lease of the grant the lessee and its sublessee, the irrigation company, acquired for the period of the respective terms of years as originally demised and thereafter extended, the appurtenant right and easement to the flow of water over and along the kuleana by the existing ditches and flumes.

For an easement to be appurtenant "there must exist a propriety of relation between the principal or dominant

---

3 *Stein, Appellant,* v. *Bell Telephone Co.*, 301 Pa. 107, 151 Atl. 690, 692.

4 *Willoughby et al.* v. *Lawrence et al.*, 116 Ill. 11, 19, 4 N. E. 356; Washburn, Easements and Servitudes, p. 3 *et seq.*; 19 C. J. Easements § 2, p. 864.

subject and the accessory or adjunct, which is to be ascertained by considering whether they so agree in nature and quality as to be capable of union without incongruity."[5]

Upon severance of tenements, the grant of an apparent easement will not be implied where the same is not necessary to the reasonable use and enjoyment of the tenement severed.[6]

In our opinion neither the ditches and flumes constructed upon the kuleana nor the water conveyed thereby were appurtenant to the grant.[7] As far as the record discloses the sole function of the ditches and flumes on the kuleana was to convey the water to, over, along and beyond the grant. The water conveyed by the flumes and ditches over the kuleana and grant belonged to a stranger —the defendant irrigation company. It does not appear that the owners of the grant, prior to the execution of their respective leases to the Pacific Sugar Mill, had any right in or to the ditches or flumes crossing the grant or to the water flowing therein. Further, it does not appear that the lessors, by reason of the presence of the ditches and flumes on the grant and the water flowing therein, were entitled, either by contract or otherwise, to the use of the ditches or flumes or to the water thereby conveyed. Neither by contract nor otherwise was the irrigation company legally obligated to serve them with water.

The right to convey water over and along the kuleana and grant by flumes and ditches was not exercised in connection with the occupancy of any land. It was not appurtenant to any estate in land but was personal to the defendant irrigation company. It was not dependent

---

[5] 16 R. C. L. § 202, p. 712.

[6] 19 C. J. Easements § 103, p. 914, cited *supra* note 1.

[7] *Quirk* v. *Falk*, 47 Cal. 453; *Ginocchio* v. *Amador C. & M. Co.*, 67 Cal. 493, 496, 8 Pac. 29; *Kobilan* v. *Dzuris*, 71 Colo. 339, 206 Pac. 790, 791.

upon any dominant tenement. The easement over the kuleana and grant is what is known as a right or easement in gross.[8] A demise for a term of years of land with appurtenances does not include the right to an easement in gross exercised by another upon the reserved adjoining lands of the lessor.[9]

Holding as we do that the easement upon and over the kuleana was not appurtenant to the grant but was in gross, the relation created between the parties upon the Pacific Sugar Mill securing "control" of the grant under the leases to it of 1912 becomes immaterial further than their relations may be material to the issue of hostility of the use and occupation by the defendant of the kuleana.

Title to an easement such as claimed by the defendant upon and over the kuleana may be acquired in two ways: 1. By grant. 2. By prescription. By grant, is by special permission of the owner of the fee. The grant itself is the best evidence of title and it "derives no strength from time or occupation." By prescription, is by use and occupation for the period prescribed by law adverse to the true owner of the fee. Such use and occupation are substituted for the grant. In other words, they give rise to the presumption that a grant existed, since lost or destroyed by time or accident.[10]

To give rise to the presumption of a grant, the use and occupation of the easement must be long, continued, un-

---

8 *Stovall* v. *Coggins Granite Co.*, 116 Ga. 376, 42 S. E. 723, 725; *Willoughby et al.* v. *Lawrence et al.*, 116 Ill. 11, 19, 4 N. E. 356, cited *supra* note 4; *Antonopulos* v. *Postal Telegraph Cable Co.*, 26 N. Y. S. (2d) 403; *Chase* v. *Cram*, 39 R. I. 83, 97 Atl. 481, 483; Jones, Easements § 33, p. 25; 1 Thompson, Real Property § 316, p. 503, § 341, p. 552; 19 C. J. Easements § 5, p. 866.

9 *Quirk* v. *Falk*, *Ginocchio* v. *Amador C. & M. Co.*, *Kobilan* v. *Dzuris*, all *supra* note 7; 67 C. J. Waters § 583, p. 1099.

10 *Kalaukoa* v. *Keawe*, 9 Haw. 191, 192, 193; *Branan* v. *Wimsatt*, 298 Fed. 833; *Rush* v. *Collins*, 366 Ill. 307, 8 N. E. (2d) 659, 662; *Fletcher* v. *Fuller*, 120 U. S. 534 546; *Lawton* v. *Rivers*, 2 McCord 445 (S. C.).

interrupted and peaceable. Consonant with the local statutory limitation upon the time of commencing actions for the recovery of real property, the required use and occupation must be exercised and enjoyed for a period of ten years. The longer the period the stronger the presumption of a grant.

The trial court found as facts a use and occupation of the easement upon and over the kuleana for a period of over thirty years, sufficient to establish title by prescription. Its findings are amply supported by the evidence. Continuous, uninterrupted and adverse user of an easement for over thirty years gives rise to the presumption of a grant of the easement thereby imposed upon the fee.

No support is found in the evidence of plaintiff's claim that defendant's use and occupation of the kuleana was permissive. The evidence that plaintiff and his predecessors in interest paid the territorial real property taxes assessed against the fee does not rebut hostility. It does not appear that the easement upon and over the kuleana, if legally assessable or assessable separately from the fee, was ever assessed for territorial real property tax purposes.

Nor was the relation of lessor and sublessee ever created between plaintiff's predecessors in interest and the defendant in respect to the adjoining grant. The covenants of the mill company contained in the contract of January 24, 1906, in respect to rights of way over lands owned or controlled by it were executory. It never granted to the irrigation company a right of way over the adjoining grant. Hence no contractual relation was ever created between the mill company and the irrigation company nor between the plaintiff or its predecessors in interest and the irrigation company in respect to the same. As far as we know the original entry by the irrigation company upon the adjoining grant, which we may assume

was at about the same time as its entry upon the kuleana (1907), was made under the same circumstances as its entry upon the kuleana. And its use and occupancy of the grant is susceptible to the same implications as its use and occupancy of the kuleana.

The burden to show that the use and occupancy of the kuleana was permissible and not hostile was upon the plaintiff.[11] In this he has wholly failed. Under the circumstances the rule enunciated by this court in the case of *Albertina* v. *Kapiolani Estate*, 14 Haw. 321, 325, applies. Where, as here, "one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile."[12] Being hostile, no notice of hostility was necessary other or in addition to the notice which occupancy and use afford.

Consistently with the views herein expressed the exceptions are overruled.

*P. Cass* (*Cass & Silver* on the briefs) for plaintiff-appellant.

*C. S. Carlsmith* (*Carlsmith & Carlsmith* and *Robertson & Castle* on the brief) for defendant-appellee.

---

11 *Rees* v. *Dixon*, 291 Ky. 379, 164 S. W. (2d) 950, 952; *Stetson* v. *Youngquist et al.*, 76 Mont. 600, 248 Pac. 196, 197.

12 (See also *Kapiolani Estate* v. *Cleghorn*, 14 Haw. 330, 338; *O. R. & L. Co.* v. *Kaili*, 22 Haw. 673, 677; *Territory* v. *Pai-a*, 34 Haw. 722, 726.)